UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
KEVIN E. BURNS, BARBARA R. BURNS,    : 03 Civ. 1685 (RMB)(JCF)
and RENEE A. DEFINA,                 :
                                     :
                 Plaintiffs,         :   MEMORANDUM
                                     :    AND  ORDER
     - against -                     :
                                     :
BANK OF AMERICA, ITS AFFILIATES,     :
SUBSIDIARIES, and AGENTS, including  :
but not limited to BA MORTGAGE,      :
                                     :
                 Defendants.         :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The pro se plaintiffs bring this action against the defendant, Bank of America, N.A. ("Bank of America"),[1] alleging violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., the Truth in Lending Act (the "TILA"), 15 U.S.C. § 1601 et seq., and a variety of Minnesota state laws. The allegations relate to a mortgage loan issued to the plaintiffs by Bank of America's predecessor-in-interest. The plaintiffs have moved for relief relating to various discovery issues. The defendant opposes the plaintiffs' motion and has cross-moved on related discovery issues. For the reasons that follow, the plaintiffs' motions are denied and the defendant's motions are

---

[1] The complaint names as defendants Bank of America and its affiliates, subsidiaries, and agents, including BA Mortgage. I will refer to these entities collectively as "Bank of America."

1

granted in part and denied in part.

Background

The underlying dispute in this case relates to the defendant's foreclosure in October 1988 on a property owned by the plaintiffs.[2] The plaintiffs allege, among other things, that on three separate occasions from about November 2001 to May 2002, they disputed an unspecified "trade line" regarding their creditworthiness that was reported to various credit bureaus by Bank of America. (Amended Complaint ("Am. Compl."), attached as Exh. U to Declaration of Steven S. Rand, dated Oct. 30, 2006 ("Rand 10/30/06 Decl."), ¶¶ 15-25). On June 7, 2002, Douglas Norton, Bank of America's Executive Relations Officer, agreed to delete the disputed "trade line," and Bank of America subsequently contacted the Equifax, Trans Union, and Experian credit reporting services to inform them of the deletion. (Am. Compl., ¶¶ 26-27). However, in mid-July 2002, another Bank of America employee named "Diane" directed CSC Credit Services, Inc. ("CSC") to continue reporting the trade line. (Am. Compl., ¶¶ 29-31). The plaintiffs allege that CSC reported the trade line seven times, and that the plaintiffs were denied credit as a result of these reports. (Am. Compl., ¶ 33).

The instant motion concerns various items of discovery sought

_____

[2] The factual background of this litigation is set out at length in a previous order, Burns v. Bank of America, No. 03 Civ. 1685, 2003 WL 22717827, at *1-2 (S.D.N.Y. Nov. 18, 2003), and will be discussed here only insofar as it is relevant to the instant motion.

by the plaintiffs.  They have made various requests for relief and motions for sanctions related to the defendant's conduct during discovery.  The plaintiffs also appear to request summary judgment on several of their claims.  In addition, they have asked that I recuse myself from further involvement in the case.  The plaintiffs first made their motion in a letter dated October 9, 2006.  (Letter from Barbara R. Burns, dated Oct. 9, 2006 ("Burns 10/9/06 Letter").  They then filed formal motion papers on October 16, 2006 requesting the same relief.  (Plaintiffs' Motion to Compel Discovery and for Other Relief dated Oct. 16, 2006 ("Pl. 10/16/06 Memo.")).   The defendant replied and cross-moved for various forms of relief by letter dated October 17, 2006.  (Letter of Steven S. Rand dated Oct. 17, 2006 ("Rand 10/17/06 Letter")).   Since then, the plaintiffs have filed five additional memoranda, styled variously as answers to the defendant's cross-motion, a supplemental motion for relief, and responses (and sur-responses) to the defendant's briefs.  The defendant, meanwhile, has filed a memorandum in opposition and cross-motion for various relief, another memorandum in opposition and in further support of its cross-motion, and a memorandum in opposition to the plaintiffs' "supplemental motion." In its papers, the defendant opposes each of the plaintiffs' requests and cross-moves for various forms of relief and for sanctions against the plaintiffs.  Each disputed issue will be discussed in turn and the relevant factual and procedural

background will be discussed as it relates to each item.

Discussion

    A. Plaintiffs' Requests

       1. Recusal

The plaintiffs contend that I should recuse myself from this case or, alternatively, be disqualified for cause. A "justice, judge, or magistrate [judge] of the United States" is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned[.]" United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992); accord Bilello v. Abbott Laboratories, 825 F. Supp. 475, 478 (E.D.N.Y. 1993). Recusal is appropriate when a judge "expresses a personal bias concerning the outcome of the case at issue." Lovaglia, 954 F.2d at 815 (citing United States v. Diaz, 797 F.2d 99, 100 (2d Cir. 1986)).

The plaintiffs claim that I have displayed "favoritism" toward the defendants and cite a number of instances that allegedly evidence this bias. First, they cite my use of the term "nonsense" in characterizing a dispute between the parties.[3] (Plaintiffs'

---

    [3] The plaintiffs refused to accept documents sent from the defendants via UPS, fax or email, despite the plaintiffs' frequent use of both fax and email to send documents to the defendants and to this Court. After months of disputes centering around the service -- or lack thereof -- of one particular memorandum from the

Response to Defendants' "Cross-Motion" dated Feb. 12, 2004 ("Pl. 2/12/07 Memo.") at 33). But "expressions of impatience, dissatisfaction, annoyance, and even anger" do not constitute bias. Liteky v. United States, 510 U.S. 540, 555-56 (1994). The mild rebuke at issue here, which was not even directed at a particular party, can therefore hardly be grounds for recusal.

Second, the plaintiffs claim that I have engaged in what are "tantamount to ex parte communications with defense counsel." (Pl. 2/12/07 Memo. at 1, 34). This allegation is untrue and the plaintiffs offer no evidence to substantiate it. The plaintiffs are likely referring to phone calls between my chambers and the individual parties to schedule conferences and the like. The Honorable Richard M. Berman, U.S.D.J., addressed this issue directly in his September 29, 2006 Order in this case. See Burns v. Bank of America, 03 Civ. 1685, 2006 WL 2819589, at *2 (S.D.N.Y. Sept. 29, 2006) (holding that scheduling call between chambers and defense counsel was not improper because "[s]uch purely procedural calls in no way bear on the merits of the proceedings to which they are related and are not ex parte communications").

Third, the plaintiffs indicate that counsel for the defendants at one point stated that they were "sure" that I would make a

---

defendant, I wrote in a January 29, 2007 letter endorsement that "[t]o avoid further nonsense, including the possibility of a hearing on service, the Court is enclosing in the plaintiffs' copy of this order a copy of defendants' 11/26/06 submissions."

particular ruling with regard to one of the discovery disputes at hand.  (Pl. 2/12/07 Memo. at 34).  The plaintiffs do not explain why this gives rise to an appearance of favoritism.  Presumably, they believe that defense counsel's confident prediction regarding a particular outcome in the dispute indicates that he is somehow in cahoots with the Court.  There is no factual basis for the plaintiffs' suspicion.

Finally, and most ironically, the plaintiffs claim that the court has "unduly prolonged and delayed adjudication" of the discovery issues at bar.  (Pl. 2/12/07 Memo. at 34).  This, after the plaintiffs have insisted on submitting over the past five months no less than six separate memoranda of law totaling well over 150 pages, for almost all of which they requested extensions, along with many additional pages of accompanying material and countless letter motions, all relating to the instant discovery disputes.

A judge has "'an affirmative duty . . . not to disqualify himself unnecessarily, particularly where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" McGann v. Kelly, 891 F. Supp. 128, 137 (S.D.N.Y. 1995) (quoting United States v. Yonkers Board of Education, 946 F.2d 180, 183 (2d Cir. 1991).  Accordingly, the motion for recusal is denied.

2. <u>Deposition of Timothy Mayopolous</u>

The plaintiffs seek to depose Timothy Mayopolous, General Counsel of Bank of America.  As Bank of America has declined to make him available for deposition, the plaintiffs now move pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel his testimony.  (Pl. 10/16/06 Memo. at 5-7).  Bank of America has in turn moved pursuant to Rule 26(c) for a protective order precluding the parties from deposing Mr. Mayopolous, claiming that he lacks knowledge of relevant facts.  (Rand 10/17/06 Letter at 4-6).

The Federal Rules set very liberal limits on the scope of discovery.  A party may inquire about "any matter, not privileged, that is relevant to [a] claim or defense[,]" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."   Fed. R. Civ. P. 26(b)(1).  "[H]ighly-placed executives are not immune from discovery.  'The fact that [an executive] has a busy schedule' is [] not a basis for foreclosing otherwise proper discovery.'".  <u>Consolidated Rail Corp. v. Primary Industries Corp.</u>, No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993)(quoting <u>CBS, Inc. v. Ahern</u>, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)).  Even where, as in this case, a high-ranking corporate officer denies personal knowledge of the issues at hand, this "claim . . . is subject to testing by the examining party."  <u>Consolidated Rail Corp.</u>, 1993 WL 364471, at *1 (citing <u>Amherst Leasing Corp. v. Emhart Corp.</u>, 65 F.R.D. 121, 122 (D. Conn.

7

1974)).

Nevertheless, discovery is not boundless, and a court may place limits on discovery demands that are "unreasonably cumulative or duplicative," or in cases where

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives. See Consolidated Rail Corp., 1993 WL 364471, at *1; Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co., No. 90 Civ. 7811, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993). Unless it can be demonstrated that a corporate official has "some unique knowledge" of the issues in the case, "it may be appropriate to preclude a [] deposition of a highly-placed executive" while allowing other witnesses with the same knowledge to be questioned. Consolidated Rail Corp., 1993 WL 364471, at *1 (citations omitted).

Here, the plaintiffs have failed to demonstrate a need for Mr. Mayopolous' testimony, and the likelihood of harassment is significant. Mr. Mayopolous did not begin working at Bank of America until 2004, well after the events at issue in this litigation. (Rand 10/17/06 letter at 4). He has attested that he has no personal knowledge of the events alleged by the plaintiffs.

(Declaration of Timothy J. Mayopolous dated Nov. 21, 2006, attached as Exh. E to Declaration of Steven S. Rand dated Nov. 29, 2006 ("Rand 11/29/06 Decl."), ¶ 3). Bank of America has instead offered the testimony of Jacqueline Tobolski, the "bank officer who is most familiar with the facts of this case." (Rand 10/17/06 Letter at 5). The plaintiffs have refused to depose Ms. Tobolski.

The plaintiffs' arguments for deposing Mr. Mayopolous rather than Ms. Tobolski are not compelling. They contend that despite his affadivit to the contrary, there is a presumption that as General Counsel Mr. Mayopolous has "personal knowledge of all major litigation involving Bank of America" and that he is the only officer who can attest to the "propriety" of actions taken by members of legal department. (Pl. 2/12/07 Memo. at 16-17). It is unclear how Mr. Mayopolous' general knowledge of "major litigation" bears on the facts of this case; if the plaintiffs are suggesting that they would depose Mr. Mayopolous regarding Bank of America's prosecution of the instant litigation, such a tactic is clearly inappropriate.

The plaintiffs state that they are entitled to information regarding interactions between two former Bank of America lawyers, Paul Kucinski and Lawrence Wilford,[4] who were involved in the handling of the foreclosure at issue here, and the General Counsel,

---

[4] Mr. Wilford actually worked at a firm that was outside counsel to Bank of America during the period in question. His situation is discussed in further detail below.

who was their supervisor.[5]  (Pl. 2/12/07 Memo. at 17).  However, Mr. Mayopolous was not General Counsel at the time of the events in question.  The basis of the plaintiffs' assumption that he has discoverable information is unclear.  The plaintiffs contend that "[i]n the absence of Paul Polking, the [] General Counsel who personally supervised Kucinski throughout [the period in question], the [p]laintiffs' notice of deposition of the successor General Counsel is reasonable." (Pl. 2/12/07 Memo. at 21-22).  But saying something is reasonable does not make it so.  If the plaintiffs believe that Mr. Polking has relevant information, they should seek to depose him just as they are seeking to depose Mr. Kucinski and Mr. Wilford, both former employees.  The plaintiffs have not demonstrated that Mr. Mayopolous has knowledge of the events in question, let alone information that is "integral and key" to their case. (Pl. 2/12/07 Memo. at 18).

Plaintiffs further suggest that even though Mr. Mayopolous has disavowed knowledge of the facts in question, he should be compelled to testify regarding Bank of America "policies, reporting structures, and internal operating procedures." (Pl. 2/12/07 Memo. at 14).  If Mr. Mayopolous is not available, they ask that they be

---

[5] The plaintiffs also allege that Mr. Kucinski and Mr. Wilford left their employment at Bank of America "by design" in order to "limit the informational channels available to the [p]laintiffs" (Pl. 2/12/07 Memo. at 17-18), and that Mr. Mayopolous' testimony is necessary to establish this fact.  Such tenuous allegations, unsupported by any evidence, are insufficient to justify the relief requested.

permitted to depose an "executive with profit-and-loss responsibility for BA Mortgage operations." (Pl. 2/12/07 Memo. at 24). However, Bank of America policy is not relevant to the plaintiffs' claims, which concern a single set of disputed transactions. Moreover, the plaintiffs have not even attempted to obtain such information from the defendant's proferred witness, Ms. Tobolski.

The plaintiffs have not "sought to question lower level corporate officials with similar knowledge before asking this Court to compel the depositions of [higher level executives]." <u>Six West Retail Acqisition, Inc. v. Sony Theatre Management Corp.</u>, 203 F.R.D. 98, 104 (S.D.N.Y.). The plaintiffs object to the defendant's proposed witness Ms. Tobolski, calling her a "glorified clerk," complaining that she has no legal training, that she has insufficient knowledge of actions taken by Mr. Kucinski, and that her testimony will consist of "exactly what attorney Rand tells her to say." (Pl. 2/12/07 Memo. at 18 & n.13). It is not clear how the plaintiffs can know the extent of Ms. Tobolski's knowledge of the events in this case without ever speaking to her. The scope of Ms. Tobolski's information is best clarified by proceeding with the deposition. Her lack of legal training should be of no import as she is a fact witness; indeed, it would be inappropriate for her to offer legal opinions. Finally, the plaintiffs' disparagement of Ms. Tobolski as a "glorified clerk" and their suggestion that she

will offer coached or perjured testimony are simply baseless.

The plaintiffs have cited a number of cases in support of their motion to compel Mr. Mayopolous's deposition, each of which is inapposite. Unlike the plaintiff in Six West, the plaintiffs in this case have not "support[ed] [their] allegations with evidence sufficient for this Court to infer that [the proposed deponent] has some unique knowledge on a number of relevant issues." 203 F.R.D. at 106. In General Star Indemnity Co. v. Platinum Indemnity Ltd., 210 F.R.D. 80 (S.D.N.Y. 2002), the court rejected a protective order seeking to prevent a deposition because (1) the witnesses who sought to avoid deposition had not provided affidavits attesting that they lacked relevant knowledge; (2) other deposition testimony indicated that the witnesses in question were likely to possess pertinent information; and (3) the party seeking deposition had already pursued alternative sources of information suggested by the defendant. Id. at 83-84. None of those factors is present here. In Speadmark, Inc. v. Federated Department Stores, Inc., 176 F.R.D. 116, 118 (S.D.N.Y. 1997), the court denied a protective order where the witness in question was involved in negotiations regarding the contract at issue. Mr. Mayopolous, by contrast, was not even working at Bank of America when the disputed transactions took place. See Scott v. Dime Savings Bank, No. 88 Civ. 5495, 1989 WL 140286, at *2 (S.D.N.Y. Nov. 16, 1989)(allowing bank to designate an official "most familiar with the facts" to

testify).  <u>Treppel v. Biovail Corp.</u>, No. 03 Civ. 3002, 2006 WL
468314, at *3 (S.D.N.Y. Feb. 28, 2006)(deposition of senior
corporate officers denied because "plaintiff has not explained why
the noticed individuals are believed to have personal knowledge of
the underlying events, nor why that knowledge is believed to be
unique," because plaintiff had "made no attempt to depose any lower
level executives," and because document discovery was not
complete).

Accordingly, the plaintiffs' motion to compel Mr. Mayopolous's
deposition is denied.  If, after deposing Ms. Tobolski and other
Bank of America employees, the plaintiffs develope a foundation for
their belief that Mr. Mayopolous possesses unique, non-duplicative
knowledge of relevant facts, they may seek his deposition at that
time.  The defendants' motion for a protective order is denied
without prejudice to renewal should the plaintiff's seek to depose
Mr. Mayopolous at some later date.

### 3. <u>Subpoena Issued to Paul Kucinski</u>

The plaintiffs seek an order declaring Paul Kucinski to be a
party witness and additionally move to be awarded costs incurred
while attempting to locate and serve him with a subpoena.  Mr.
Kucinski was an attorney for Bank of America during the period in
which the events of which the plaintiffs complain took place.  Both
parties identified him as a material witness, but Bank of America
informed the plaintiffs that he stopped working for them in 2005.

(Burns 10/9/06 Letter at 1).   The plaintiffs claim that defense counsel initially represented that they would locate Mr. Kucinski, but never did so, and that as a result the plaintiffs incurred $90.00 in fees searching for his current whereabouts.   (Burns 10/9/06 letter at 1-2).   They imply that defense counsel knew of Mr. Kucinksi's location all along, and that the fees were therefore incurred unnecessarily. (Burns 10/9/06 Letter at 2).

The plaintiffs' original motion asked that Mr. Kucinski be named a party witness, as they believed he was still an employee of Bank of America.   (Pl. 10/16/06 Memo. at 5).   However, Mr. Kucinski is a third-party witness and the plaintiffs must serve a subpoena if they wish to depose him.   Contrary to the plaintiffs' claim, defense counsel's avowed intent to represent Mr. Kucinski at his deposition is not improper; this is a courtesy frequently extended to former employees and hardly indicative of collusion.   Nor does it mean that Mr. Kucinski is not a third-party witness. Accordingly, the plaintiffs' request that Mr. Kucinski be named a party witness is denied.

The plaintiffs also accuse defense counsel of encouraging Mr. Kucinski to evade service of a subpoena duces tecum, thus forcing them to incur additional costs of $145.00 in serving him. (Plaintiffs' Supplemental Motion and Memorandum in Support of Plaintiffs' October 16, 2006 Motion to Compel Discovery and in Opposition to Defendants' Cross-Motion ("Pl. 12/4/06 Memo.") at 7-

14

8).  However, the plaintiffs offer no evidence whatsoever that Mr. Kucinski intentionally evaded service or that the defendant encouraged him to do so.[6]  Thus, there is no basis for awarding the plaintiffs the costs incurred in serving Mr. Kucinski.

The plaintiffs also allege that Mr. Kucinski has failed to produce documents requested in their subpoena and now seek a hearing "for the purpose of inquiring of Kucinski and [defense counsel Steven S.] Rand the whereabouts of the subpoenaed documents."  (Pl. 12/4/06 Memo. at 8; Pl. 1/6/07 Memo. at 28).  In

---

[6] The plaintiffs claim that they were initially unable to serve Mr. Kucinski at his home address despite several efforts to do so.  (Pl. 12/4/06 Memo. at 8; Plaintiffs' Response to Defendants' Memorandum in Opposition to Plaintiffs' Supplemental Motion and Memorandum in Support of Plaintiffs' October 16, 2006 Motion to Compel Discovery and in Opposition to Defendant's Cross-Motion ("Pl. 1/6/07 Memo.") at 26-27).  They suggest that they were unable to serve him because defense counsel warned him of the subpoena and encouraged him to evade service.  (Pl. 1/6/07 Memo. at 26).  The plaintiffs offer absolutely no evidence of this latter claim, apart from coincidence and a later letter from the defendants offering to accept services for Mr. Kucinski's in exchange for various concessions by the plaintiffs. (Pl. 1/6/07 Memo. at 29).

The defendants point out that service was attempted upon Mr. Kucinski at home at 10 a.m. on a weekday, when he was unlikely to be there, and that when the plaintiffs attempted to serve him at his place of business they were successful.  (Bank of America's Memorandum of Law in Opposition to Plaintiff's Supplemental Motion and Memorandum in Support of Plaintiffs' October 16, 2006 Motion to Compel Discovery and in Opposition to Defendants' Cross-motion ("Def. 12/12/06 Memo.") at 2).  The defendant also complains that it was not served with a copy of the subpoena (Def. 12/12/06 Memo. at 2), a charge that the plaintiffs deny.  (Pl. 1/6/07 Memo. at 20).  However, the defendant does not request any relief and now appears to have obtained a copy of the subpoena, since it is attached to their motion papers.

addition, they move for sanctions against the defendant for obstructing their attempts to obtain the documents in question.

The plaintiffs' subpoena to Mr. Kucinski is arguably overbroad, as it requests all records "naming or referencing Bank of America," including all employment records, as well as Mr. Kucinksi's tax returns and any other documents that bear upon his departure from Bank of America. (Subpoena Duces Tecum for Paul W. Kucinski dated Oct. 20, 2006 ("Kucinski Subpoena"), attached as Exh. 1 to Declaration of Steven S. Rand dated Dec. 12, 2006 ("Rand 12/12/06 Decl.")). These documents do not appear to be relevant to the plaintiffs' claims. Instead, the requests appear to be an inappropriate attempt to investigate further the plaintiffs' wholly unsubstantiated contention that Mr. Kucinski left his employment at Bank of America in order to thwart the plaintiffs' lawsuit.

However, neither the defendant nor Mr. Kucinski has objected to the subpoena, and thus I need not reach that issue here. Mr. Kucinski indicated to the plaintiffs in a letter dated December 7, 2006 that he was "not in possession or control of any documents responsive to [the inquiries] contained in your subpoena." (Letter of Paul W. Kucinski dated Dec. 7, 2006, attached as Exh. 2 to Rand 12/12/06 Decl.). The defendant has repeatedly represented to both the plaintiffs and the Court that it is in possession of many of the documents requested and that they have been produced to the plaintiffs. (Bank of America's Reply Memorandum of Law in

16

Opposition to Plaintiffs' Motion to Compel Discovery and in Further Support of its Cross-Motion ("Def. 11/29/06 Memo.") at 1 n.2; Def. 12/12/06 Memo. at 3). The plaintiffs offer no evidence that this representation is untrue. Accordingly, the plaintiffs' request for a hearing on this matter is denied, as is their request for sanctions.

### 4. Deposition of Lawrence Wilford

The plaintiffs also move to have Lawrence Wilford named a party witness, ask that they be awarded fees in conjunction with serving and attempting to depose Mr. Wilford, and seek sanctions related to their efforts to obtain discovery from Mr. Wilford. The defendant moves to quash the subpoena. For the reasons that follow, the plaintiffs' motions are denied and the defendant's motion is granted.

Mr. Wilford was a partner at Wilford & Geske,[7] the law firm that represented Bank of America in the foreclosure transaction that forms the basis of this case. (Def. 10/17/06 letter at 2; Def. 12/12/06 memo at 3). Mr. Wilford no longer works for the firm and, contrary to the plaintiffs' initial contentions, is

---

[7] The plaintiffs refer to Mr. Wilford's former law firm as "Leonard, O'Brien, Wilford, Spence and Gale, P.A." (Am. Compl., ¶¶ 37-39; Plaintiffs' Reply Brief ("Pl. 11/13/06 Memo.") at 4; Pl. 12/4/06 Memo. at 14). It appears that Wilford & Geske is the name of Mr. Wilford's current law firm rather than the firm he worked for at the time of the events in question. (Letter of Eric D. Cook dated Nov. 20, 2006 ("Cook 11/20/06 Letter"), attached as Exh. D to Declaration of Steven S. Rand dated Nov. 29, 2006 ("Rand 11/29/06 Decl.") at 1).

unquestionably a third-party witness.  The plaintiffs now seem to have conceded Mr. Wilford's status and have subpoenaed him as a non-party witness.

There is no basis for awarding the plaintiffs the costs they incurred in serving and attempting to depose Mr. Wilford.  After being informed by the defendant that Mr. Wilford was not in its employ, the plaintiffs served Mr. Wilford with two subpoenas.  The first of these was issued by the Clerk of the Southern District of New York on October 20, 2006 and set a deposition date of November 24, 2006 at an address in Minnesota near Mr. Wilford's place of business.  (Subpoena to Lawrence A. Wilford, attached as Exh. Q to Rand 11/29/06 Decl.).  Mr. Wilford responded to this subpoena on November 20, 2006, raising a number of objections and declining to appear as noticed.  (Cook 11/20/06 Letter).  He objected that the subpoena was not properly issued from the district court for the district where the deposition was to take place, in this case Minnesota; that the subpoena provided insufficient notice, as it was received on November 20 and set a deposition date only four days later (and for the day after Thanksgiving); and that the plaintiffs failed to provide witness fees.  The plaintiffs then issued a second subpoena on November 21, 2006, presumably in response to Mr. Wilford's letter.  This subpoena purports to issue from the District Court for the District of Minnesota, sets the same deposition time and place, and is signed not by the Clerk of

18

the Court but by plaintiff Barbara R. Burns.  (Subpoena to Lawrence A. Wilford, attached as Exh. R to Rand 11/29/06 Decl.).  This subpoena directed Mr. Wilford to appear on December 1, 2006.  This subpoena is clearly invalid.  Rule 45(a)(3) provides that an attorney may issue a subpoena on behalf of a court in which the attorney is authorized to practice or on behalf of a court in which the deposition is to be held if it pertains to an action pending in a court where that attorney is authorized to practice.  Since, as far as I can determine, Ms. Burns is admitted in neither New York nor Minnesota, the subpoena is a nullity.  Bank of America's motion to quash the second subpoena is therefore granted.

It appears that the plaintiffs convened a deposition on December 1, 2006, at which Mr. Wilford did not appear, and for which they now request costs of $300.00.  (Pl. 12/4/06 Memo at 14).  This request is without merit, since both of the subpoenas issued by the plaintiffs were invalid.

Mr. Wilford appears to be a key witness in this case, and he will need to be deposed at some point if this litigation is to proceed.  The parties appear to have agreed (Bank of America presumably speaking for Mr. Wilford in this respect) that Mr. Wilford, upon a properly issued subpoena, will be deposed in Minnesota.  (Def. 12/12/06 Memo. at 7; E-mail from Barbara Burns dated Dec. 12, 2006 ("Burns 12/12/06 E-mail"), attached as Exh. 10 to Rand 12/12/06 Decl.).  This deposition should proceed as

expeditiously as possible.

     5. <u>Requests for Documents</u>

The plaintiffs' original motion alleged that the defendant had failed to respond to any of the plaintiffs' document requests and moved to compel such responses. (Burns 10/9/06 letter at 2-3; Pl. 10/16/06 Memo. at 5-7). This issue appears to have been largely resolved, as the plaintiffs inspected documents made available by the defendant on November 13 and 14, 2006. (Def. 11/29/06 Memo. at 5-6; Pl. 12/4/06 Memo. at 18). Accordingly, the request is denied as moot.

Now, however, the plaintiffs allege that the defendants have improperly withheld certain documents on the basis of the attorney-client privilege and move to compel their production. (Pl. 1/6/07 Memo. at 29-33). According to the plaintiffs, these documents include "third-party documents," among them "publicly-filed documents and communications." (Pl. 1/6/07 Memo. at 7-8, 31). The plaintiffs also allege, without evidence, that the defendants "parked" documents with attorneys and encouraged them to take notes on the documents so that they could be withheld as privileged. (Pl. 1/6/07 Memo. at 31). The defendants dispute both of these charges, denying any improper designation of privileged documents, asserting that they fully explained all designations in their privilege log, and claiming that any documents containing hand-written attorneys' notes were produced with such notes redacted. (Def. 11/29/06 Memo.

20

at 6; Def. 12/12/06 Memo. at 3).

The Court cannot act based on such blanket accusations and denials.  I have not even seen a copy of the privilege log in which the contested documents are listed, and it is impossible for me to rule on the defendants' assertions of privilege without additional information regarding the documents in question.  Accordingly, the plaintiffs' motion to compel production of documents designated as privileged by the defendant must be denied at this time, along with their request for sanctions.  If the plaintiffs wish to pursue this issue, they must submit a list of the specific documents for which they dispute the defendant's assertion of privilege.  The defendant must then submit a copy of its privilege log and any other documentation that establishes the reason for the invocation of privilege.  I will then be in a position to rule on the issue.

### 6. Requests for Admission

The plaintiffs assert that the defendant has failed to respond adequately to their First Request for Admissions and that it has "misrepresented" facts in its response.  (Pl. 10/16/06 Memo. at 3, 6, 10; Pl. 11/13/06 Memo. at 8).  They move for sanctions under Rule 37 and ask that the defendant be forced to admit the contested facts.

The plaintiffs repeatedly claim that the defendant has "refused to provide required admissions."  (Pl. 10/16/06 Memo. at 6).  However, Bank of America responded to the plaintiffs' First

21

Request for Admissions on September 5, 2006, admitting, denying, or objecting to each item as required under Rule 36.  (Response to Plaintiffs' First Request for Admissions, attached as Exh. L to Rand 10/30/06 Decl.).  In fact, the plaintiffs appear to dispute only one of the defendant's responses.  Namely, they are incensed by the defendant's denial of the first request for admission, which asks the defendant to admit that before December 5, 2002 neither Bank of America nor BA Mortgage were "of record" with respect to the certificate of title for the Minnesota property that forms the basis of this litigation.  (Plaintiffs' First Request for Admissions to Defendants, attached as Exh. E to Rand 10/30/06 Decl., ¶ 1).  The plaintiffs call this response "false" and "perjurious" and argue that it warrants sanctions of various kinds. (Pl. 10/16/06 Memo. at 3; Pl. 11/13/06 Memo. at 7; Pl. 1/6/07 Memo. at 33-34).

> A party who fails to respond to a request for admission in violation of Rule 36 is liable to the requesting party under Rule 37(c) for reasonable expenses, including attorney's fees, upon a showing by the requesting party of the genuineness of the document or the truth of the matter that was the subject of the request for admission.  An attorney who fails to respond properly to a request under Rule 36 is also subject to sanctions under Rule 26(g).

Herrera v. Scully, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) (citing Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 1009, 1014 (2d Cir. 1988)).  Under Rule 36(a), a denial must "fairly meet the substance of the requested admission."  Moreover, "'[a] denial must

22

be forthright, specific and unconditional.'"   Booth Oil Site
Administrative Group v. Safety-Kleen Corp., 194 F.R.D. 76, 79
(W.D.N.Y. 2000) (quoting Wright & Miller, Federal Practice &
Procedure § 2260 at 729).  Here, the defendant's denial clearly met
those requirements.

The basis for the plaintiffs' allegations, and their motion
for sanctions, appears to be a letter from Lawrence Wilford, which
allegedly states that all assignments of mortgage must be recorded
before a foreclosure by advertisement, which they deem to be a
"party admission."[8]  (Pl. 10/16/06 Memo. at 3 n.2, 7 n.3).  The
defendant, in its response to the requested admission, states that
the mortgage in question was originated by Ameristar Financial
Corporation and eventually assigned to NationsBanc, which
ultimately merged with BA Mortgage, which in turn merged with Bank
of America, thus presumably making Bank of America the mortgage
holder "of record" with respect to the property in question.  At a
minimum, it is clear that Mr. Wilford's letter, assuming it says
what the plaintiffs say it does, does not itself contradict Bank of
America's response, as it says nothing regarding the propriety of
the specific foreclosure mentioned in the request.  It is

---

[8] Although the plaintiffs indicate that this letter is
attached as Exhibit L to the Declaration of Barbara R. Burns dated
October 16, 2006 (Pl. 10/16/06 Memo. at 3 n.2, 7 n.3), Exhibit L
consists of an e-mail exchange between Ms. Burns and defense
counsel.  The Court has not reviewed Mr. Wilford's Letter since the
plaintiffs apparently failed to submit it.

impossible to evaluate the parties' competing factual claims over this issue without delving extensively into the record and conducting additional discovery.  "[I]t would be premature to assess the sufficiency of these denials without giving the [] defendant[] the opportunity to submit [its] complete evidence to the Court on a motion for summary judgment or at trial to establish that [it has] good faith arguments supporting these denials." Herrera, 143 F.R.D. at 551.

This issue goes to the heart of many of the plaintiffs' claims; an admission of this request would be tantamount to conceding liability on certain of the plaintiffs' claims.  "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested.  Where, as here, issues in dispute are requested to be admitted, a denial is a perfectly reasonable response." United Coal Cos. v. Powell Construction Co., 839 F.2d 958, 967 (3d Cir. 1988)(internal citations omitted).  Accordingly, the plaintiffs' motion for sanctions and other relief must be denied at this time.  As the case goes forward, "[t]he burden of proof is on the [] defendant[] to show that, at the time they responded to the Request, [it] had good faith reasons to believe that [it] would succeed in proving the falsity of the statements [it] denied[.]" Herrera, 143 F.R.D. at 551.

### 7. Rule 11 Sanctions

The plaintiffs move for sanctions against the defendant under

Rule 11.  They claim that the defendant has made arguments that "have no evidentiary or other support" and are intended to "harass[,] . . . obstruct, and delay" adjudication of the plaintiffs' claim.  (Pl. 1/6/07 Memo. at 39-40).  This allegation is questionable, as the issues the plaintiffs reference involve complicated questions of law and fact at the heart of this litigation.  The defendant could likely take a different position from the plaintiff on such issues without triggering Rule 11 sanctions.[9]  Moreover, it is premature to consider a motion for sanctions on such issues where, as here, the parties are still in the midst of discovery.  However, I need not reach the merits of the plaintiffs' Rule 11 motion, as they have failed to observe the proper procedure for filing such a motion.  Rule 11 provides in pertinent part that

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged . . . .  It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

---

[9] The plaintiffs here and elsewhere mischaracterize the Second Circuit's ruling in this case, Burns v. Bank of America, 115 Fed. Appx. 105 (2d Cir. 2004), as having rejected the defendant's motion to dismiss and its substantive arguments on the merits.  (Pl. 1/6/07 Memo. at 40).  In fact, the court accepted the defendant's arguments, but in light of the plaintiffs' pro se status, deemed it "prudent to allow the plaintiffs an opportunity to amend their complaint."  Id.

Fed. R. Civ. P. 11(c)(1)(A).  Here, the plaintiffs have failed to observe these strictures, as they have included their motion for sanctions as part of their discovery motion and have failed to give the defendant the required 21-day "safe harbor" in which to correct their submissions.  Accordingly, the plaintiffs' motion is denied.

>        8. Judgment on the Merits

The plaintiffs assert that they are entitled to "judgment as a matter of law" on the merits of the case.  (Pl. 11/13/06 Memo. at 9-16).  The plaintiffs appear to be requesting that the defendant be precluded from contesting liability as a discovery sanction under Rule 37.  While courts may impose such a sanction, it is generally disfavored and only to be employed in "extreme circumstances."  See Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994)(noting that "'[d]ismissal with prejudice is a harsh remedy to be used only in extreme situations'" (quoting Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 764 (2d Cir. 1990))); see also Friends of Animals Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997) (noting that "dismissal is [] a severe sanction that should not be lightly imposed"); Ashkinazi v. Sapir, 02 Civ. 2, 2005 WL 545205, at *4 (S.D.N.Y. March 8, 2005) (collecting cases for the proposition that dispositive sanctions are "within the court's arsenal" but are "generally disfavored").  This case certainly does not present such an extreme situation.  As discussed above, the plaintiffs' claims do not provide the basis for any sanctions whatsoever, let alone

the extreme remedy of dismissal.

To the extent that the plaintiffs request judgment on the merits in the form of summary judgment rather than as a discovery sanction, such a motion is premature as the parties are in the midst of discovery. The plaintiffs may of course file a dispositive motion, if one is warranted, at the close of discovery.

### 9. Equitable Relief

In a similar vein, the plaintiffs also claim that the defendant's actions give rise to "claims for extrinsic fraud." (Pl. 12/4/06 Memo. at 22). They ask for "equitable relief" that amounts to a decision on the merits: return of their property and damages from the defendant. Their accusations of fraud relate both to the merits of the underlying action which, as explained above, I am not in a position to rule on at this time, and to the defendant's actions during previous iterations of this litigation. Specifically, the plaintiffs allege that the defendant "colluded" with various other parties to "prevent the [p]laintiffs from knowing their rights and defenses" by "playing" this Court and the Minnesota state courts "against each other." (Pl. 12/4/06 Memo. at 23-24). It is not clear from their papers what the plaintiffs are talking about. Suffice it to say that there is no evidence before me of any fraudulent conduct. The plaintiffs' motion for equitable relief is denied.

### 10. Motion to Strike

Finally, the plaintiffs move under Rule 12(f) to strike the

defendant's November 29, 2006 submissions in whole or in part.  In
particular, the plaintiffs object to two exhibits attached to those
submissions:   a March 24, 1995 order from the United States
District Court for the District of Minnesota rejecting the
plaintiffs' attempt to remove an earlier iteration of this
litigation to that court (Order dated March 24, 1995, attached as
Exh. A to Rand 11/29/06 Decl.), and an April 2, 1997 order from the
Hennepin County District Court placing certain restrictions on Ms.
Burns' conduct before that court (Order dated April 2,1997.
attached as Exh. C to Rand 11/29/06 Decl.).  (Pl. 2/12/07 Memo. at
27-32).  They argue that these orders are irrelevant and have been
preempted and rendered null by later rulings in those actions.  In
addition, they argue that the defendant has "misstate[d] and
mischaracterize[d] the facts and procedural history" of this
action.  (Pl. 2/12/07 Memo. at 27-28).

Rule 12(f) of the Federal Rules of Civil Procedure provides
that upon motion of a party or upon the court's own initiative,
"the court may order stricken from any pleading any insufficient
defense or any redundant, immaterial, impertinent, or scandalous
matter."  But the reply brief and accompanying materials of which
the plaintiffs complain is not a pleading, and thus is not properly
the subject of a motion under Rule 12(f).  Monroe v. Board of
Education, 65 F.R.D. 641 (D. Conn. 1975), cited by the plaintiffs,
does not hold otherwise.  Indeed, the court in that case concluded
that the material in question, which was "an exhibit to the

defendant's brief in opposition to the plaintiff's motion for partial summary judgment" was <u>not</u> "part of a 'pleading'" under the Federal Rules. <u>Id.</u> at 645. Instead, the court considered the motion to strike "an invitation by the plaintiff to consider whether the [material in question] as submitted by the defendant may properly be relied upon." <u>Id.</u> Since my opinion here does not rely upon the material of which the plaintiffs complain, such an invitation is unnecessary. Even were I to examine the disputed exhibits and find them to be as immaterial and potentially misleading as the plaintiffs allege, the proper remedy under <u>Monroe</u> would be to disregard the materials for purposes of the motion, rather than to strike them as the plaintiffs request. <u>See id.</u> at 647; <u>see also</u> <u>Latino Quimica-Amtex S.A. v. Akzo Nobal Chemicals B.V.</u>, No. 03 Civ. 10312, 2005 WL 2207017, at *10 n.6 (S.D.N.Y. Sept. 8, 2005) (inappropriate to strike brief under Rule 12(f). The plaintiffs' request to strike the defendant's November 29, 2006 submissions is therefore denied.

     B. <u>Defendant's Requests</u>

        1. <u>Deposition of Kevin Burns</u>

     The defendant moves to compel the appearance of Kevin Burns for deposition in New York. (Rand 10/17/06 letter at 7-8). The plaintiffs contend that they have made Mr. Burns available for deposition and that the defendant has failed to serve a notice for him to appear. (Plaintiffs' Response to Defendants' Cross-Motion dated Nov. 11, 2006 ("Pl. 11/11/06 Memo.") at 3 n.5, 16). The

parties now appear to have agreed that Mr. Burns will be deposed in New York.   (Def. 12/12/06 Memo. at 7; Burns 12/12/06 E-mail, attached as Exh. 10 to Rand 12/12/06 Decl.).   The defendant's motion is therefore moot but may be renewed if the parties fail to reach an accommodation on this issue.

### 2. Interrogatories and Document Requests

The defendant moves to compel responses to its First Set of Interrogatories and Document Production Requests, to which it claims the plaintiffs have failed to respond.   (Rand 10/17/06 Letter at 7; Bank of America's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Discovery and in Support of its Cross-Motion ("Def. 10/30/06 Memo.") at 10).   The plaintiffs oppose this motion and cross-move for a protective order shielding them from what they call the defendant's "frivolous, harassing, and unauthorized" discovery requests.   (Pl. 10/16/06 Memo. at 9).

The crux of this dispute appears to be the defendant's request for certain documents referenced in the amended complaint, which the plaintiffs claim are not in their possession.   The defendant requested these documents, which include the plaintiffs' credit reports, correspondence between the plaintiffs and either Bank of America or credit reporting agencies, and other written statements and documents referenced in the complaint.   (First Set of Interrogatories to Plaintiffs, attached as Exh. O to Rand 10/17/06 Letter; First Request for the Production of Documents to Plaintiffs, attached as Exh. K to Rand 10/30/06 Decl.).   The

plaintiffs responded to the interrogatories on October 8, 2006 (Plaintiffs' Answers to Defendant's Interrogatories, attached as Exh. P to Rand 10/17/06 letter), but have declined to respond to the defendant's request for production of documents. They seek a protective order shielding them from these requests on the grounds that the documents in question are not in their possession and have "deferred response" to the requests until their request for a protective order is adjudicated.[10]   (Pl. 10/16/06 Memo. at 7-8; Letter of Barbara R. Burns dated October 9, 2006, attached as Exh. N to Rand 10/17/06 letter).

The Federal Rules of Civil Procedure require parties to produce only documents that are "in the possession, custody or control of the party." Fed. R. Civ. P. 34(a). Thus, the plaintiffs are not obligated to produce documents that are not in their control, even documents referenced in their complaint. The plaintiffs' failure to produce evidence to support their claims may properly be the subject of a motion for summary judgment, but not a motion to compel production.

However, the fact that a party does not have requested

---

[10] The plaintiffs further allege that many of the documents sought by Bank of America are in fact in the defendant's possession and that the request is therefore duplicative and submitted solely for the purpose of harassing the plaintiffs.  Bank of America denies possession of the documents in question.  The Court is not in a position to assess the truth of these competing claims, but they are irrelevant to the matter at hand.  Parties are required to produce relevant materials in their possession during discovery, regardless of whether they may already be in the possession of the opposing party.

documents in its possession is not grounds for refusing to <u>respond</u> to a discovery request, nor is it grounds for a protective order. The burden is on the plaintiffs to demonstrate that there is good cause to grant a protective order.   Fed. R. Civ. P. 26(c); <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986).   "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."   <u>Cipollone</u>, 785 F.2d at 1121.   Here, the plaintiffs do not allege any harm whatsoever, since, according to them, they do not possess any of the documents being requested.   Their only claim seems to be that even being forced to respond formally to such requests constitutes harassment.   The defendant is requesting copies of documents referenced in the complaint; such a request is hardly "frivolous, harassing, and unauthorized." (Pl. 10/16/06 Memo. at 9).   The plaintiffs have therefore failed to demonstrate cause for a protective order and must respond.  If the documents in question are not in the plaintiffs' possession, they may say so in their response.

Accordingly, the plaintiffs shall respond formally to the defendant's First Request for the Production of Documents by June 15, 2007.

### 3. <u>Plaintiffs' Third Interrogatories</u>

The defendant moves to quash the plaintiffs' Third Set of Interrogatories, served on October 18, 2006, on the grounds that the plaintiffs have exceeded the number of interrogatories provided

for under the Federal Rules of Civil Procedure.  Rule 33(a) provides that, absent stipulation or permission of the court, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts[.]"  Here, plaintiffs have served three sets of interrogatories, totaling 26 separate interrogatories.  Their third set of interrogatories, contains only one request:  that the defendant identify "notices" sent from the defendant to plaintiffs Kevin Burns or Renee DeFina with respect to the property in Minnesota that lies at the heart of this dispute.  The request is relevant and does not seem overly onerous, and I will therefore permit the plaintiffs to serve it.  However, I note that Local Rule 33.3 discourages the use of interrogatories during discovery where a request for production or a deposition is a more practical method of obtaining the information sought.  Here, as the plaintiffs seek particular documents, a request for production might well have been a more appropriate means to seek the information in question.  I encourage the plaintiffs to seek information in the future through requests for production or deposition testimony rather than through additional interrogatories.

### 4. Alan Rappaport Subpoena

The defendant moves to quash a subpoena <u>duces</u> <u>tecum</u> served by the plaintiffs on Alan Rappaport.  Mr. Rappaport is the President of Bank of America's Family Wealth Advisors.  (Def. 11/29/06 Memo. at 9).  He appears to have been served by the plaintiffs in an

effort to circumvent the regular discovery process.  Indeed, the plaintiffs explain that, following what they considered an unsatisfactory response to their first document request, they "contacted the Bank of America executive offices and spoke to a personal aide to Kenneth Lewis," Bank of America's Chief Executive Officer.  (Pl. 12/4/06 Memo. at 8-9).  They obtained Mr. Rappaport's name from this aide and proceeded to serve Mr. Rappaport with a subpoena requesting the same documents that they had sought in their discovery request.  The defendant argues that the subpoena should be quashed because it is duplicative of the plaintiffs' other discovery requests, with which the defendant says it has already complied.  (Def. 11/29/06 Memo. at 9).  Bank of America further asks that the plaintiffs be prohibited from contacting its employees directly regarding matters related to this litigation.  (Def. 12/12/06 Memo. at 9).

Rule 45 of the Federal Rules of Civil Procedure provides for the service of a subpoena "to produce and permit inspection, copying, testing, or sampling of designated books, documents, electronically stored information, or tangible things in the possession, custody or control of that person, or to permit inspection of premises, at a time and place therein specified." Fed. R. Civ. P. 45(a)(1)(c).  The rule does not, by its terms, prohibit the service of subpoenas upon parties to an action.[11]  See

---

[11] It does prohibit service of subpoenas <u>by</u> a party to an action, <u>see</u> Fed. R. Civ. P. 45(b)(1); thus, Ms. Burns may not

First City, Texas-Houston, N.A. v. Rafidain Bank, 197 F.R.D. 250, 255 n.5 (S.D.N.Y. 2000) ("[N]othing in the Federal Rules of Civil Procedure explicitly precludes the use of Rule 45 subpoenas against parties."); see also Mortgage Information Services, Inc. v. Kitchens, 210 F.R.D. 562, 564 (W.D.N.C. 2002)(same); Badman v. Stark, 139 F.R.D. 601, 603 (E.D. Pa. 1991)(noting that "a subpoena under Rule 45 may be served upon both party and non-party witnesses"); but see Alper v. United States, 190 F.R.D. 281, 183 (D. Mass. 2000) ("[I]t is apparent that discovery of documents from a party, as distinct from a non-party, is not accomplished pursuant to Rule 45."); Hasbro, Inc. v. Serafino, 169 F.R.D. 99, 100 (D. Mass. 1996)(same).

On the other hand, subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34.  "'[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'"  Hasbro, 168 F.R.D. at 100 (quoting Wright & Miller, Federal Practice and Procedure § 2204) (alterations in original).  Moreover, Rule 26(b)(2)(c) provides that "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that [] the discovery sought is unreasonably

herself serve subpoenas in this case.  However, there is no evidence that she has done so here.

cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[.]" The plaintiffs' subpoena for precisely the same documents as demanded in their First Request for the Production of Documents is clearly duplicative.  Accordingly, the defendant's motion to quash the subpoena to Mr. Rappaport is granted.

As for the defendant's request that the plaintiffs be prohibited from contacting Bank of America employees, it is true that DR 7-104(A)(1) bars attorneys from communicating with a represented party.  However, "since plaintiff[s] here [are] not [] attorney[s] and [are] proceeding pro se, DR 7-104(A)(1) does not apply to [them]."[12]  Eldaghar v. New York Department of Citywide Administration Services, 02 Civ. 9151, 2004 WL 421789, at *2 (S.D.N.Y. March 5, 2004).  Thus, the Court is without authority to prohibit Ms. Burns from contacting Bank of America employees.  That having been said, ex parte communications with opposing parties are generally not good practice, and I strongly encourage Ms. Burns to take up any future discovery issues with opposing counsel rather than with the corporate client.

------

[12] In addition, it is unlikely that the "personal aide" to Bank of America's CEO whom the plaintiffs spoke with is considered a represented party for the purposes of this litigation.  See Niesig v. Team I, 76 N.Y.2d 363, 376, 559 N.Y.S.2d 493, 499 (1990)(holding that "ex parte interviews with nonmanagerial witnesses employed by a corporate defendant" are not violations of ethics rules). Whether communications with Mr. Rappaport, who is certainly in a managerial position, would be allowed under Niesig is less clear but need not be decided for the purposes of the present motion.

5. <u>Subpoenas for Credit Records</u>

The defendant wishes to subpoena records concerning the plaintiffs from third-party credit reporting agencies ("CRAs") CSC Credit Services, Equifax, Trans Union, and Experian. The CRAs, it contends, are in sole possession of information central to the plaintiffs' claims.[13] The plaintiffs move to quash the subpoenas (which have not yet been issued) or to subject them to a protective order. The dispute arises over the scope of the information requested and the privacy protections attached to the information. In particular, the plaintiffs object to the fact that the subpoenas request all records concerning the plaintiffs, not just information concerning the "trade line" that contained allegedly inaccurate information, and to the fact that the subpoenas include all records for the past six years, as opposed to only those records for the period during which this dispute arose.[14]   The defendant also

---

[13] The plaintiffs claim that Bank of America must also possess these records, as the records in question concern Bank of America transactions and, according to the plaintiffs, federal law requires that Bank of America retain the records for seven years. (Pl. 12/4/06 Memo. at 15).  Thus, they argue, the subpoenas should be quashed as duplicative and burdensome. Setting aside the fact that the request does not burden the plaintiffs directly, it seems unlikely that Bank of America would have copies of all the records encompassed by its subpoenas to the CRA, including documents internal to the CRAs concerning the disputed credit lines. Moreover, the only way of assessing the veracity of the plaintiffs' contentions is by taking the proposed discovery.  Even if Bank of America already possesses many of the documents in question, this is not a bar to its taking discovery in this matter.

[14] The plaintiffs also object that the subpoenas ask for records on all three of the named plaintiffs, including Ms. DeFina, whose credit information is not mentioned in the the amended

furnished the plaintiffs with a proposed Confidentiality Agreement (E-mail of Steven S. Rand dated Nov. 21, 2006, attached as Exh. H to Rand 11/29/06 Decl.), which the plaintiffs have declined to execute because they feel it is insufficiently restrictive.  (E-mail of Barbara Burns dated Nov. 21, 2006, attached as Exh. I to Rand 11/29/06 Decl.; Stipulation and Order of Confidentiality, attached as Exh. G to Pl. 12/04/06 Memo.).

Pursuant to Rule 26(c)(7), a court may issue a protective order providing that confidential information not be revealed in discovery or that it be revealed only in a designated way.  As noted above, the burden is on the party seeking a protective order to demonstrate good cause for its issuance.  See Cipollone, 785 F.2d at 1121; Pavlovich v. City of New York, No. 91 Civ. 5030, 1992 WL 230472, at *4 (S.D.N.Y. Aug. 31, 1992) (citing In re "Agent Orange" Products Liability Litigation, 821 F.2d 139, 145 (2d Cir. 1987)).  "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).  Here, the plaintiffs have met this burden with regard to some of their requests, but have failed to do so with respect to the full range of restrictions that they seek.

In order to determine whether to issue . . . a protective

_____

complaint.  (Pl. 12/4/06 Memo. at 15).  This contention, however, appears to be incorrect, as the subpoenas submitted by the defendant do not include Ms. DeFina. (Subpoenas, attached as Exhs. J - N to Rand 11/29/06 Decl.).

order under Rule 26(c) of the Federal Rules of Civil
Procedure, it is necessary to conduct a three-step
analysis.  First, the party resisting discovery has the
burden of showing that the information requested is
confidential and its disclosure would be harmful.  Then
the burden shifts to the party seeking discovery to
demonstrate that the information sought is relevant and
necessary.  Finally, the court must weigh the need for
the information against the harm that would result from
disclosure.

Madanes v. Madanes, 186 F.R.D. 279, 288 (S.D.N.Y. 1999) (citing In

re Remington Arms Co., 952 F.2d 1029, 1032 (8th Cir. 1991)); Rywkin

v. New York Blood Center, No. 95 Civ. 10008, 1998 WL 556158, at *3

(S.D.N.Y. Aug. 31, 1998)).  Here, both parties concede that the

information in question is confidential and potentially sensitive.

Thus, the plaintiffs have met their initial burden.  Both parties

also concede that the information in question is central to the

plaintiffs' FCRA claims.  However, the plaintiffs' FCRA claims

pertain only to certain transactions between November 2001 and

November 2002.  (Am. Compl., ¶¶ 15-33).  Bank of America has not

demonstrated the relevance of the plaintiffs' full credit records

for the entire period from 2001 forward. Accordingly, the subpoenas

should be limited to records concerning the disputed transactions.

For ease of compliance, the subpoenas may request all records

concerning the plaintiffs from January 1, 2001 to December 31,

2002.  For subsequent periods, only records concerning the disputed

transactions are relevant to the litigation.

Second, both parties agree that some provision for

confidentiality is appropriate, as the information in question is

private and potentially sensitive.  However, the plaintiffs'
request to limit circulation of the documents to defendant's
General Counsel and "executive management" is unduly restrictive
and is not justified by any showing of potential harm.  The
plaintiffs' allegations that "certain lower-level Bank of America
employees . . . willfully misused [] information . . . to harm the
[p]laintiffs" and to "sabotage" the plaintiffs' financial
transactions are factually unsupported (Pl. 12/4/06 Memo. at 15-
16).  Even if true, these allegations would not necessarily justify
the broad restrictions requested by the plaintiffs.  The defendant
appears to agree to limit distribution of the documents in question
to those employees with "knowledge of the facts." (E-mail of Steven
S. Rand dated December 11, 2006, attached as Exh. 7 to Rand
12/12/06 Decl.).   In addition, any confidential information
disclosed in discovery must be used solely for purposes of this
litigation and shall be destroyed upon the conclusion of
litigation.  Such restrictions are sufficient to ensure the
confidentiality of the information sought.  The plaintiffs' request
for a liquidated damages clause in a confidentiality agreement is
also unnecessary.  The confidentiality restrictions are part of a
court order, and any violation of their terms will subject the
violator to appropriate sanctions.

For the above reasons, the plaintiffs' motion to quash the
subpoenas is denied and Bank of America's requested subpoenas to
the CRAs may issue, subject to the restrictions discussed above.

40

### 6. Disqualification of Barbara Burns

The defendant renews its request that Barbara Burns be prevented from appearing on behalf of all the plaintiffs. (Rand 10/17/06 Letter at 5-6). From the outset of this litigation, Ms. Burns has purported to represent all of the plaintiffs. However, as I noted in my Order of July 27, 2006, Ms. Burns is not a member of the bar of this Court and thus may not represent anyone other than herself in litigation.[15]  See Burns, 2006 WL 2819589, at *2; see also Tindall v. Poultney High School District, 414 F.3d 281, 284 (2d Cir. 2005) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause."); Sweat v. United States, No. 05 Civ. 221, 2005 WL 3179672, at *1 (N.D.N.Y. Nov. 29, 2005) ("[A] pro se litigant cannot represent another pro se litigant."); McGee v. City of Rochester, No. 04 Civ. 6310, 2004 WL 2491647, at *1-2 (W.D.N.Y. Nov. 2, 2004) ("As explained by the Second Circuit, because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause." (quotation marks and citation omitted)). Despite this order, Ms. Burns has continued to file briefs and motion papers that purport to be on behalf of all the plaintiffs.

---

[15] Indeed, it appears that Ms. Burns may not be an attorney at all. A court in a related proceeding wrote that "[a]pparently, Burns has taken internet law courses and identifies herself as a law school graduate through those courses." (Burns v. Chubb Insurance Cos., No. SOM-L-1284-04 (N.J. Super. Ct. Law Div. Sept. 2, 2005), attached as Exh. 14 to Rand 12/12/06 Decl.).

The plaintiffs argue that because Ms. Burns has acted as the plaintiffs' "de facto attorney" since "the inception of the case," this state of affairs has now become "the law of the case" and must be ratified by the court.  (Pl. 11/11/06 Memo. at 11; Pl. 12/4/06 Memo. at 19-21).  Moreover, they contend, this arrangement "has served the interests of the plaintiffs as well as the larger objective of judicial economy." (Pl. 11/11/06 Memo. at 11).  They therefore move that my July 27, 2006 Order requiring that each of the plaintiffs appear pro se be vacated.

However, continued violation of court orders does not render that violation "the law of the case."  Various courts, including this one, have repeatedly informed Ms. Burns and the other plaintiffs that she may not legally represent them and that they must retain counsel or appear pro se.  That is still the case.

However, as the plaintiffs point out, each plaintiff has signed all the pleadings and other filed documents.[16] As a result, all of the plaintiffs are effectively proceeding pro se, albeit with Ms. Burns acting as their informal spokesperson.  If the plaintiffs wish to continue this arrangement, that is their prerogative.  Ms. Burns may not, however, purport to represent the other plaintiffs legally, nor litigate the case as an attorney

---

[16] I note, however, that only Ms. Burns has signed the discovery requests to the defendant, which purportedly come from all of the plaintiffs.  Ms. Burns must either obtain the signatures of each of the plaintiffs or make it clear that the discovery requests are hers alone.

42

would.  She may not, for instance, represent the other plaintiffs at their depositions, nor may she purport to bind all of the plaintiffs in settlement.

Accordingly, the plaintiffs' motion to vacate is rejected and the defendant's request is granted to the extent that I reaffirm my July 27, 2006 Order that each plaintiff in this case must be regarded as appearing <u>pro</u> <u>se</u>.

### 7. <u>The Defendant's Remaining Requests</u>

The defendant asks that I require the plaintiffs to comply with pending court orders, the Federal Rules of Civil Procedure, and the local rules of this Court.  (Def. 12/12/06 Memo. at 9).  The plaintiffs are of course required to comply with all federal and local rules of practice, as well as pending court orders; an order requiring them to do so would be redundant.  The defendant's frustration is  understandable given the plaintiffs' refusal to engage in discovery and their marginal compliance with previous court orders.  A blanket order to comply with established procedure, however, is not a useful exercise.  I have addressed each of the defendant's individual requests in turn.  If the defendant has other complaints regarding specific instances of non-compliance with the Federal Rules or other procedural requirements, it should bring them to my attention and they will be addressed.

The defendant also requests that the court place a limit on the plaintiffs' "abusive, voluminous [] letter-demands."  (Def. 12/12/06 Memo. at 9).  The defendant claims that the plaintiffs

have sent at least 25 substantive letter-demands since October 29, 2006, not including her formal submissions.  (Def. 12/12/06 Memo. at 9 n.23).  While this certainly represents a large number of substantive requests in a three-month period, it does not on its face warrant a protective order.  The defendant does not point to any specific contacts or requests that are irrelevant, duplicative, overly burdensome or harassing. Therefore, the defendant's request is denied.

8. <u>Suggestion of Death of Renee DeFina</u>

Finally, the defendant moves that discovery be stayed temporarily pending identification of a substitute party for deceased plaintiff Renee DeFina.  (Rand 10/17/06 Letter at 8).  It avers that such a stay is necessary to avoid the possibility of "duplicative discovery" that might be taken once a substitute party enters the case.

It appears that this motion is now moot.  Bank of America filed a Suggestion of Death for Ms. DeFina on October 3, 2006. (Suggestion of Death of Renee A. DeFina, attached as Exh. S to Rand 10/17/06 Letter).  Under Rule 25(a)(1), a motion for substitution must be made no later than 90 days after the suggestion of death; otherwise the action will be dismissed as to the deceased party. Since no motion for substitution has been filed, this action is now dismissed with regard to Ms. DeFina.

<u>Conclusion</u>

For the reasons set forth above, the following requests by the

plaintiffs are denied: (1) their motion for recusal; (2) their motion to compel the deposition of Timothy Mayopolous; (3) their request to have Paul Kucinski and Lawrence Wilford designated party witnesses; (4) their request for costs associated with locating and deposing Mr. Kucinski and Mr. Wilford; (5) their motion to compel the production of documents withheld pursuant to attorney-client privilege; (6) their motion to force the defendant to admit Plaintiffs' First Request for Admission; (7) their motion for judgment on the merits; (8) their request for equitable relief; (9) their motion to strike portions of the defendant's submissions to the court; (10) their motion for Rule 11 sanctions; and (11) their other motions for sanctions arising from the above discovery disputes.

The defendant's motions to quash the subpoenas issued to Lawrence Wilford and Alan Rappaport and to compel responses to the defendant's document production request are granted. The motion to prevent Barbara Burns from appearing on behalf of all the plaintiffs is granted to the extent that I affirm my prior order that Ms. Burns may represent only herself. The defendant's motion to subpoena records from the CRAs is granted subject to the restrictions outlined above. The defendant's motions to quash the plaintiff's third set of interrogatories, to compel the deposition of Kevin Burns, and for additional relief are denied. The claims of plaintiff Renee DeFina are dismissed.

The deadline for completing discovery is extended to July 16, 2007.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          June 4, 2007

Copies mailed this date to:
Barbara R. Burns
Kevin E. Burns
980 Main Street
Hackensack, New Jersey 07601

Steven S. Rand, Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, New York 10022