

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
KEVIN E. BURNS and BARBARA R. BURNS,      :
and RENEE A. DEFINA,                      :
                                          :
                                Plaintiffs,      :
           - against -                     :
                                          :
BANK OF AMERICA, its affiliates, subsidiaries  :
and agents, including but not limited to   :
BA MORTGAGE,                               :
                                          :
                             Defendants.      :
-------------------------------------------------------------x

03 Civ. 1685 (RMB) (JCF)

**DECISION AND ORDER**

**I.      Introduction**

On or about August 2, 2005, Kevin E. Burns, Barbara R. Burns, and Renee DeFina

(collectively, "Plaintiffs") filed a pro se amended complaint ("Amended Complaint")

alleging, among other things, that Bank of America, its affiliates, subsidiaries, and agents,

including Bank of America Mortgage (collectively, "Bank of America" or "Defendants")

violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Truth in Lending Act, 15

U.S.C. § 1601, et seq. ("TILA"), and various provisions of Minnesota state law.[1]  Plaintiffs'

allegations relate to (i) inaccurate credit information about Plaintiffs that allegedly was

reported to various credit bureaus by Bank of America beginning on November 1, 2001, and

---

[1]      Although Plaintiffs are proceeding pro se, the Court believes Barbara Burns to be an
attorney.  (See Order, dated June 28, 2006 ("June 28, 2006 Order"), at 1 n.1); see also Larsen
v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, 295 n.2 (E.D.N.Y. 2008).  At oral argument
on November 19, 2008, Barbara Burns declined to respond when asked by the Court whether
she is an attorney.  (See Hearing Tr., dated Nov. 19, 2008 ("Nov. 19, 2008 Hearing Tr."), at
9.)
      Renee DeFina, Barbara Burns's mother, is deceased and is no longer a party to this
action.  See Burns v. Bank of America, No. 03 Civ. 1685, 2007 WL 1589437, at *10 n.9
(S.D.N.Y. June 4, 2007).  Kevin Burns is Barbara Burns's ex-husband.  See Burns v.
Ungerman, No. 03 Civ. 17802, 2004 WL 848272, at *1 (Minn. Dist. Ct. Jan. 16, 2004).

(ii) the December 5, 2002 (foreclosure) sale of Plaintiffs' mortgaged property in Dakota County, Minnesota ("Minnesota Property"). (See Am. Compl., undated, filed Aug. 2, 2005, at 8–21.)[2]

Plaintiffs filed the Amended Complaint following the December 14, 2005 decision of the United States Court of Appeals for the Second Circuit which vacated this Court's December 18, 2003 Order dismissing Plaintiffs' original complaint, dated March 11, 2003. See Burns v. Bank of America, 115 Fed. Appx. 105 (2d Cir. 2004) ("The district court properly granted the [D]efendants' motion to dismiss the complaint for substantially the reasons it articulated in its order, but we think it prudent to allow the plaintiffs an opportunity to amend their complaint.") (citations omitted); see also Burns v. Bank of America, No. 03 Civ. 1685, 2003 WL 22990065 (S.D.N.Y. Dec. 18, 2003).

On or about June 28, 2006, this Court issued an order granting in part Bank of America's motion to dismiss the Amended Complaint. The June 28, 2006 Order denied Bank of America's motion with respect to Plaintiffs' claims under FCRA § 1681s-2(b), the FDCPA, the Minnesota Consumer Fraud Act ("MCFA"), and Minnesota trespass, conversion, and slander law. (See June 28, 2006 Order at 6, 28.) At that time, the Court also

---

[2]     Plaintiffs contend that this case represents the continuation of Bank of America v. Burns, 01 Civ. 1339 (D. Minn. filed July 24, 2001) ("Minnesota Action"), which appears to have been filed by Bank of America in the state courts of Minnesota and, thereafter, removed to the United States District Court for the District of Minnesota on or about July 24, 2001. According to Plaintiffs, that case was then "transferred" to the Southern District of New York on or about June 21, 2006. (See Pl. Cross-Mot. at 6 n.3; Am. Compl. at 2 n.1; see also Nov. 19, 2008 Hearing Tr. at 16–18, 26.) The Minnesota Action appears to have been dismissed without prejudice by United States District Judge David S. Doty for lack of jurisdiction on or about June 21, 2002. (See Order in 01 Civ. 1339, dated June 21, 2002, at 1; see also Hearing Tr. in 01 Civ. 1339, dated June 21, 2002, at 6.) On or about March 11, 2003, Plaintiffs brought this action against Bank of America in the Southern District of New York.

2

denied Plaintiffs' motion for summary judgment on their claims that "Bank of America had no legal rights against the property and its 'foreclosure' of the . . . mortgage [was] illegal and void," because, among other things, (i) "a proposed determination of the parties' legal (real property) interest in the mortgaged property and the legality of the 2002 foreclosure" were "issues not found in the Amended Complaint," and (ii) "Minnesota Statute § 542.02 governs Minnesota Real Property claims and mandates that Plaintiffs' claims must be litigated in Dakota County, Minnesota." (Id. at 26 (internal quotations and citations omitted).)

On or about April 24, 2008, Bank of America moved for summary judgment on Plaintiffs' remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that:  (1) Plaintiffs' FCRA and MCFA claims should be dismissed because Plaintiffs have "fail[ed] to provide any evidence of . . . alleged damages"; (2) "[u]nder FCRA § 1681n(c), this Court should award Bank of America its attorney's fees incurred in responding to Plaintiffs' . . . harassing and knowingly unsubstantiated FCRA allegations"; (3) Plaintiffs have no claim under the FDCPA because "Bank of America was a creditor and not a debt collector with respect to [P]laintiffs' loan"; (4) Plaintiffs' Minnesota state law trespass, conversion, and slander of title claims fail because Bank of America had the right "as a matter of contract and as a matter of law" to enter and take possession of the Minnesota Property to prevent waste and to commence a foreclosure action; and (5) Plaintiffs "should be precluded pursuant to [Fed. R. Civ. P.] 37 from offering any evidence not previously disclosed in discovery."  (Bank of America's Mot. for Summ J., dated Apr. 24, 2008 ("BOA Mot."), at 7, 12, 28; see also id. at 20–21.)

On or about June 4, 2008, Plaintiffs filed an opposition to Bank of America's motion and "renewed" motion for summary judgment on all of Plaintiffs' (remaining) federal and

state law claims.  (See Pls. Renewed Mot. for Summ. J., undated, filed June 4, 2008 ("Pls.

Cross-Mot.").)[3]  Plaintiffs also moved pursuant to Fed. R. Civ. P. 11 and 37 for sanctions "as

just compensation for costs . . . incurred by Plaintiffs in responding to the duplicative,

voluminous pleadings and 'certifications' filed by defense counsel, an unsuccessful legal

position asserted on appeal, and two unsuccessful motions to dismiss"; and pursuant to Fed.

R. Civ. P. 56(f) "to enable the [deposition of Minnesota attorney Lawrence Wilford

('Wilford')] to be taken."  (Pls. Cross-Mot. at 12, 20.)[4]

On or about June 19, 2008, Bank of America filed a reply, arguing, among other

things, that Plaintiffs "have sought this relief [i.e., sanctions] previously in discovery motions

before [United States] Magistrate Judge James C. Francis IV, and their applications have

been summarily denied."  (Bank of America's Reply in Supp. of Mot. for Summ. J., dated

June 19, 2008 ("BOA Reply"), at 8.)  On or about July 14, 2008, Plaintiffs filed a sur-reply

("Pls. Sur-Reply").  As noted, oral argument was held on November 19, 2008.

---

[3]     Plaintiffs' Rule 56.1 Statement, dated June 3, 2008, and Rule 56.1 Counterstatement, dated July 14, 2008, do not cite "to admissible evidence of record supporting each . . . fact," Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003), although it appears clearly from Plaintiffs' briefing papers that Plaintiffs have been notified of (and understand) their obligations under Fed. R. Civ. P. 56 and Local Civil Rule 56.1.  (See, e.g., Pls. Rule 56.1 Statement, dated June 3, 2008 ("Pls. 56.1"); Pls. Rule 56.1 Counterstatement, dated July 14, 2008 ("Pls. 56.1 Counterstatement"); Not. to Pro Se Opposing Summ. J., dated Apr. 24, 2008.)  In any event, "the record [has been] reviewed independently" by the Court to avoid prejudice to any party.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).

[4]     At oral argument on November 19, 2008, Plaintiffs offered as exhibits Plaintiffs' Statement of Undisputed Facts Pursuant to Rule 56.1 of the Civil Rules of the Southern District of New York, dated June 3, 2008 ("Court Exhibit A"), and Plaintiffs' Compliance with Order Regarding Trial Memorandum and Disclosures, dated March 14, 2008 ("Court Exhibit B").  (See Nov. 19, 2008 Hearing Tr. at 7–14; see also Ltr. from Steven S. Rand to Hon. Richard M. Berman, dated Nov. 19, 2008; Ltr. from Barbara R. Burns and Kevin E. Burns to Hon. Richard M. Berman, dated Nov. 21, 2008.)

For the following reasons, Bank of America's motion for summary judgment is granted in part and denied in part, and Plaintiffs' motion for summary judgment is denied.

## II.    Background

On October 28, 1988, Kevin and Barbara Burns "as husband and wife . . . executed a promissory note . . . evidencing a $111,000.00 mortgage loan . . . made by Ameristar Financial Corporation ('Ameristar') to Mr. and Ms. Burns." (Bank of America Rule 56.1 Statement, dated Apr. 24, 2008 ("BOA 56.1"), ¶ 1.)  The promissory note "was secured by a mortgage dated October 28, 1988 ('Mortgage') forming a lien on [the Minnesota Property]." (BOA 56.1 ¶ 2.)  "On November 30, 1988, Ameristar caused the Mortgage to be duly filed with the office of the Registrar of Titles of Dakota County, Minnesota."  (BOA 56.1 ¶ 4.) "On February 15, 1990, Ameristar assigned the Mortgage to [Bank of America's predecessor in interest] Goldome Realty Credit Corporation."  (BOA 56.1 ¶ 4.)  On or about December 1, 1999, Bank of America obtained the Mortgage "by way of merger and a series of name changes."  (BOA Mot. at 25; see also BOA 56.1 ¶¶ 4–9, Decl. of Jacqueline M. Tobolski, dated Apr. 22, 2008 ("Tobolski Decl."), ¶¶ 4–9 & Exs. B, C; Decl. of Lawrence A. Wilford, dated Apr. 18, 2008 ("Wilford Decl."), Ex. I (attached Certificate of Title to Minnesota Property).)

Bank of America asserts that "[o]n July 5, 2002, the [Mortgage] was in default, and it remained in default [in the amount of approximately $99,994.51] through the date of the foreclosure sale" on December 5, 2002.  (BOA 56.1 ¶ 21; see also Wilford Decl., Ex. H.) "On September 6, 2002, Bank of America ordered an initial property inspection from First American [Field Services ('First American')] in connection with the [Minnesota Property]"

and "First American subcontracted with Fisher Pratt, Inc. ('Fisher Pratt')."  (BOA 56.1 ¶¶ 18,

19; see also Decl. of Michael W. Smith, dated Apr. 18, 2008 ("Smith Decl."), ¶¶ 4, 5.)

Fisher Pratt inspected and/or secured the Minnesota Property on or about September 6, 2002,

September 23, 2002, October 17, 2002, November 17, 2002, and December 17, 2002, and

indicated that the property was vacant on those occasions.  (See BOA 56.1 ¶¶ 20, 23, 25, 34;

see also Smith Decl. ¶¶ 7, 9, 12, 13, 14, 16; Tobolski Decl., Ex. L; Wilford Decl., Ex. F.)

   "On September 12, 2002, Bank of America referred the [Mortgage] to outside

counsel, i.e., the law firm of Leonard, O'Brien, Wilford, Spencer and Gale, Ltd. ('Leonard,

O'Brien'), to commence non-judicial foreclosure proceedings."  (BOA 56.1 ¶ 21; see also

Toboloski Decl. ¶ 21.)  "On October 1, 2002, Leonard, O'Brien sent notices to the Burns at

the [Minnesota Property address] notifying them of their default, Bank of America's

commencement of foreclosure proceedings against them and the Burns's right to reinstate the

mortgage."  (BOA 56.1 ¶ 29; see also Wilford Decl. ¶ 7 & Ex. A.)  "The Dakota County

Tribune published [a] notice of non-judicial foreclosure sale [of the Minnesota Property]

from October 10, 2002 to November 14, 2002, and the notice indicated that the sale date was

scheduled for December 5, 2002."  (BOA 56.1 ¶ 32; see also Wilford Decl. ¶ 10 & Ex. D.)

   "On December 5, 2002, third-party Wells Fargo Bank Minnesota, N.A. purchased the

[Minnesota Property]."  (BOA 56.1 ¶ 21; see also Wilford Decl. ¶ 13 & Ex. G.)  "The

[P]laintiffs did not exercise their rights of redemption concerning the [Minnesota] Property

during the statutory six (6) month redemption period listed in the Sheriff's Certificate of

Sale."  (BOA 56.1 ¶ 39.)  In or about June 2003, "R.A. Ungerman Construction, Inc. ['R.A.

Ungerman'] obtained title . . . by redeeming" the Minnesota Property.  (BOA 56.1 ¶ 40.)  On

or about December 24, 2003, following a duly noticed evidentiary hearing, "the Dakota

County Minnesota District Court issued an Order in which it held, <u>inter alia</u>, that a new certificate of title [to the Minnesota Property] should be issued to [R.A. Ungerman] and that the foreclosure and Sheriff sale conducted [by Bank of America Mortgage] was proper in every material respect." (BOA 56.1 ¶ 41; <u>see also</u> Wilford Decl. ¶ 16 & Ex. I (<u>In re Petition of R.A. Ungerman Construction, Inc.</u>, No. 03 Civ. 9789 (Minn. Dist. Ct. Dec. 24, 2003) ("<u>In re R.A. Ungerman</u>").) Bank of America asserts that Plaintiffs failed properly to appeal the Minnesota District Court's December 24, 2003 Order. (<u>See</u> BOA 56.1 ¶ 42; <u>see also</u> Nov. 19, 2008 Hearing Tr. at 5.)

Barbara Burns has disputed a Bank of America Mortgage trade line on her Trans Union credit report on or about October 26, 2001 (referring to "repossession") and in or about December 2001 (referring to "foreclosure"). (<u>See</u> Decl. of Eileen Little, dated Apr. 18, 2008 ("Little Decl."), ¶ 7 & Exs. B, D; <u>see also</u> Tobolski Decl. ¶ 47.) "[O]n October 30, 2001, Trans Union notified Bank of America of [Barbara Burns's] dispute." (Little Decl. ¶ 10; <u>see also</u> Tobolski Decl. ¶ 47.) "[A]fter speaking with Bank of America, on or about January 11, 2002, [Trans Union] updated [Barbara Burns's] credit report . . . and changed [the Bank of America trade line] to 'paid or paying as agreed.'" (Little Decl. ¶ 10; <u>see also</u> Tobolski Decl. ¶ 47.) "For the period May 2001 through January 11, 2002, Trans Union received no hard inquiries from any mortgage lenders in connection with an application for a loan by [Barbara] Burns." (BOA 56.1 ¶ 56; <u>see also</u> Little Decl. ¶ 10.)

Plaintiffs allege that "[b]etween the dates of January 1, 2002 and June 30, 2002, [they] applied for and were approved for a mortgage refinance loan with Chase Mortgage ['Chase']" and "[o]n or about April 30, 2002 . . . Chase rescinded the approved mortgage

refinance based upon derogatory trade lines reported by [Bank of America] Mortgage." (Pls. 56.1 ¶ 16.)

In or about May 2002, Kevin Burns disputed the Bank of America trade line on his credit report to CSC Credit Services ("CSC") an affiliate of Equifax Information Services, LLC ("Equifax"). (See Decl. of Janice Fogleman, dated Apr. 22, 2008 ("Fogleman Decl."), ¶ 11; see also BOA Rule 56.1 Counterstatement, dated June 19, 2008 ("BOA Counterstatement"), ¶ 14.) "CSC and/or Equifax 'froze' the Bank of America trade line, and [Kevin Burns's] credit file from July through November 2002 continued to indicate during those months that the [Mortgage] was current." (BOA 56.1 ¶ 52; see also Fogleman Decl. ¶ 12.)

Plaintiffs allege that "[o]n or about October 1, 2002, the Plaintiffs obtained an approved refinance offer from Upland Mortgage ['Upland'] and scheduled a closing for November 16, 2002." (Pls. 56.1 ¶ 23.) Plaintiffs further allege that "Upland contacted Bank of America and [Bank of America] Mortgage for payoff and other information necessary to close the loan refinance a total of thirteen times between October 1, 2002 and December 30, 2002" and "Bank of America and [Bank of America] Mortgage refused to provide the requested information, thereby preventing the Upland loan from being closed." (Id. ¶ 24.) Plaintiffs allege that "but for [Bank of America's] false and damaging certifications as furnishers of consumer credit information, the Plaintiffs would have successfully 'dumped' [Bank of America] and created a new relationship with either Chase or Upland on terms far more favorable." (Pls. Cross-Mot. at 21.)

### III.   Legal Standard

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 236 (2d Cir. 1998). "If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Jonas v. Int'l Airline Employees F.C.U., No. 03 Civ. 3374, 2006 WL 1409721, at *2 (S.D.N.Y. May 19, 2006) (internal quotations and citation omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[A]ll reasonable inferences must be drawn against the [moving] party," and summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

The same standard applies where, as here, the parties file cross-motions for summary judgment. Id. "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id.

When the party opposing summary judgment is pro se, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation and citation omitted); see also Jonas, 2006 WL 1409721, at *2. "By the same token, however, a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to

overcome a motion for summary judgment." Thompson v. Tracy, No. 00 Civ. 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan. 17, 2008) (internal quotations omitted).

## IV.    Analysis

### (1)    FCRA and MCFA Claims

Bank of America argues, among other things, that Plaintiffs "could not have suffered any injury to their credit" based upon Bank of America's actions because "[e]ven assuming, arguendo[,] that Bank of America had misreported [Barbara] Burns's credit to Trans Union in October through December of 2001 (which Bank of America denies), during that limited three-month period, Trans Union received no hard inquiries from any mortgage lenders in connection with an application for a loan for [Barbara] Burns"; and "although [Kevin Burns] apparently did complain [about his credit report] to CSC in May 2002 . . . [his] credit reports were not negative or adverse at that time." (BOA Mot. at 10, 11–12; see also id. at 21 (Plaintiffs' "MCFA claim must fail . . . for the same reasons that [P]laintiffs' [FCRA] claim fails").)

Plaintiffs counter, among other things, that Bank of America "did in fact certify and otherwise falsify derogatory consumer credit trade lines concerning the Plaintiffs at various times in 2001 and 2002" and "but for [Bank of America's] false and damaging certifications as furnishers of consumer credit information, the Plaintiffs would have successfully 'dumped' [Bank of America] and created a new relationship with either Chase or Upland on terms far more favorable." (Pls. Cross-Mot. at 21.)

Section 1681s-2(b) of the FCRA "imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a [consumer reporting agency] pursuant to 15

U.S.C. § 1681i(a)(2)." Jonas, 2006 WL 1409721, at *6. "Liability under the FCRA attaches

for both negligent violations, which require a showing of actual damages, see 15 U.S.C. §

1681o, and willful violations, for which statutory and punitive damages are available, see 15

U.S.C. § 1681n." Rosenberg v. Cavalry Invs., LLC, No. 03 Civ. 1087, 2005 WL 2490353, at

*2 (D. Conn. Sept. 30, 2005). Plaintiffs bear the burden of demonstrating "the existence of a

material factual dispute as to the existence of damages." Spector v. Experian Info. Servs.,

321 F. Supp. 2d 348, 356 (D. Conn. 2004); see also Caltabiano v. BSB Bank & Trust Co.,

387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005).

There is no showing that Bank of America either failed to investigate Plaintiffs'

disputed information or that Bank of America's investigations were unreasonable as a matter

of law. See Amendoeira v. Monogram Credit Card Bank of Georgia, No. 05 Civ. 4588, 2007

WL 2325080, at *1 (E.D.N.Y. Aug. 7, 2007) ("courts have required a 'reasonable

investigation' to determine whether disputed information can be verified" under FCRA §

1681s-2(b)) (citation omitted).

**Damages**

But, even assuming, arguendo, that Bank of America violated § 1681s-2(b), summary

judgment in favor of Bank of America would still be appropriate because "no reasonable

factfinder could find that [Plaintiffs are] entitled to damages under the FCRA," Trikas v.

Universal Card Servs. Corp., 351 F. Supp. 2d 37, 43 (E.D.N.Y. 2005); see also Casella v.

Equifax Credit Info. Servs., 56 F.3d 469, 473 (2d Cir. 1995), as explained below.

"To obtain an award of actual damages under the [FCRA], [Plaintiffs] must present

evidence of a causal relation between the violation of the statute and the loss of credit, or

some other harm." Whiting v. Harley-Davidson Fin. Servs., 534 F. Supp. 2d 823, 833–34

(N.D. Ill. 2008) (internal quotations and citation omitted); see also Casella, 56 F.3d at 473.

Plaintiffs have "not presented sufficient evidence of damages to survive summary judgment."

Trikas, 351 F. Supp. 2d at 45.  Plaintiffs fail "to present [any] affirmative evidence that [they

were] in fact denied a loan application . . . because of the alleged incorrect information

contained in [their] credit report[s]." Evans v. Credit Bureau, 904 F. Supp. 123, 126

(W.D.N.Y. 1995); see also Collins v. Experian Credit Reporting Serv., 494 F. Supp. 2d 127,

135–36 (D. Conn. 2007); Spector, 321 F. Supp. 2d. at 356.  And, Plaintiffs' deposition

testimony that they applied for and were denied loans by Chase and Upland based upon the

alleged inaccurate information in their credit reports is unsubstantiated, speculative, and

conclusory, and "insufficient to avoid summary judgment on an issue as to which [Plaintiffs]

bear[] the ultimate burden of proof."[5] Lee v. ITT Standard, 268 F. Supp. 2d 315, 354

(W.D.N.Y. 2002); see also Caltabiano, 287 F. Supp. 2d at 142 ("To demonstrate an actual

injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth

other evidence that such an injury occurred."); Collins, 494 F. Supp. 2d at 135–36.

---

[5]     Barbara Burns stated (in speculative and conclusory terms) at her deposition, among
other things, that "[c]ertain employees of Bank of America Mortgage falsified certain credit
reporting trade lines resulting in a declination of the [Chase] loan"; "[t]here were credit
defamations that resulted in the inability of the Plaintiffs to obtain credit when the Plaintiffs
should have been able to obtain it"; and "Bank of America made numerous
misrepresentations as to the Plaintiffs' creditworthiness and took steps to actively thwart and
obstruct an approved refinance with Upland . . . thereby preventing a real estate closing
scheduled for [November 16, 2002]."  (Dep. of Barbara R. Burns, dated Aug. 30, 2007 ("B.
Burns Dep."), at 28, 52, 56–57; see also Certification of Barbara R. Burns, undated and
unsworn ("B. Burns Certification"), ¶ 6.)
        Kevin Burns stated (in speculative and conclusory terms) at his deposition, among
other things, that "I believe I was turned down for a couple of credit cards I applied for and
I'd have to check my records for anything else"; and Plaintiffs had a problem obtaining
approval from Chase for their refinance application because "we had derogatory trade lines
on our credit reports from Bank of America."  (Dep. of Kevin E. Burns, dated Aug. 29, 2007
("K. Burns Dep."), at 98, 117.)

Evidence put forth by Bank of America indicates that, in response to Barbara Burns's October 26, 2001 and December 2001 complaints, Trans Union consulted with Bank of America and, on or about January 11, 2002, "changed [the Mortgage trade line] to 'paid or paying as agreed,'" i.e., months before the alleged Chase and Upland denials.[6]  (Little Decl. ¶ 12); see also Cadet v. Equifax Credit Servs., No. 05 Civ. 4843, 2008 WL 189873, at *6 (E.D.N.Y. Jan. 18, 2008) (credit denials did not occur between "the date Trans Union was notified of the inaccuracy . . . and the date they corrected their records").  And, "for the period May 2001 through January 11, 2002, Trans Union received no hard inquiries from any mortgage lenders in connection with an application for a loan for [Barbara] Burns."  (Little Decl. ¶ 14); see also Johnson v. Equifax, Inc., 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007) (plaintiff "proffered no evidence that . . . Regions [Bank] relied on a Trans Union report to deny her a loan").

Plaintiffs have "failed to show that the disputed [information] caused the [alleged] credit denial[]" by Upland.  Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004); see also (Fogleman Decl. ¶ 12 (Kevin Burns's credit report "continued to indicate during [the five month period from July 2002 through November 2002] that . . . the loan was 'I-1' or in good standing").)

Plaintiffs failed to allege any emotional distress damages in their Amended Complaint.  But, even assuming, arguendo, that they had done so, the only support for such a claim is Barbara Burns's unsupported and conclusory deposition testimony that "[t]here was

---

[6]     The record also indicates that on or about June 26, 2002 (i.e., prior to the alleged Upland denial in November 2002), "Bank of America forwarded a Universal Data Form ('UDF')" to Trans Union, Experian, and CSC, instructing them to "remove all derogatory information from [Barbara Burns's Bank of America] trade line."  (Tobolski Decl. ¶ 41 & Ex. N.)

public humiliation within the community where Bank of America was holding itself up as the owner of the [Minnesota Property] and the Plaintiffs as the trespassers." (B. Burns Dep. at 52); see also Mele v. Davidson & Assocs., Inc., 02 Civ. 0450, 2004 WL 2285111, at *6 (W.D.N.Y. Oct. 7, 2004) ("It is well-established that a party cannot move for summary judgment on an issue that was not raised in the pleadings."). Plaintiffs "must produce more than conclusory allegations regarding stress and frustration to recover for emotional distress under the FCRA." Molina v. Experian Credit Info. Solutions, 02 Civ. 5561, 2005 WL 5525336, at *6 (N.D. Ill. Jan. 19, 2005); see also Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003) (plaintiff's "bare allegations that he was 'embarrassed' and 'humiliated' were insufficient to justify sending the issue to the jury").

Nor does the record "support a finding of willfulness . . . and, on a motion for summary judgment, [Plaintiffs] cannot rely on conclusory allegations." Trikas, 351 F. Supp. 2d at 44 (internal quotations and citation omitted); see also Casella, 56 F.3d at 476; Spector, 321 F. Supp. 2d at 348 ("[T]o survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating conscious disregard or deliberate and purposeful actions."). Plaintiffs set forth no evidence that Bank of America's investigations pursuant to FCRA § 1681s-2(b) "involved willful misrepresentations or concealments." Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1987); see also Spector, 321 F. Supp. 2d at 357–58. To the contrary, as noted, the record shows that Bank of America responded to Barbara Burns's October and December 2001 disputes by "instruct[ing] Trans Union to . . . change [the Mortgage trade line] to 'paid or paying as agreed'" on or about January 11, 2002. (Toboloski Decl. ¶ 47); see also Garrett v. Trans Union, L.L.C., No. 04 Civ. 00582, 2006 WL 2850499, at *12 (S.D. Ohio Sept. 29, 2006) (even "[f]ailure to

14

adequately re-investigate or promptly correct or delete information after notice does not constitute willfulness."); Casella, 56 F.3d at 476.

The record also indicates that, for example, on June 26, 2002, Bank of America "reported to the [consumer reporting agencies] that the [Mortgage] was 'current' and/or 'paid or paying as agreed' even though [P]laintiffs were or recently had been in default." (Toboloski Decl. ¶ 40; see also id. ¶ 41 & Ex. N.)  Bank of America's "course of conduct does not support the kind of conscious disregard or deliberate and purposeful actions necessary to make out a claim for willful noncompliance under the FCRA." Casella, 56 F.3d at 476 (internal quotations and citation omitted).

Bank of America is also entitled to summary judgment on Plaintiffs' MCFA claim. "To show a violation of the [MCFA], Plaintiffs must demonstrate two elements:  [i] there must be an intentional misrepresentation relating to the sale of merchandise, and [ii] the misrepresentation must have caused damage to the plaintiff." Hopkins v. Trans Union, L.L.C., No. 03 Civ. 5433, 2004 WL 1854191, at *6 (D. Minn. Aug. 19, 2004) (internal quotations and citation omitted).  Even assuming, arguendo, "that Plaintiffs can prove an intentional misrepresentation [by Bank of America prior to December 15, 2001], Plaintiffs have not demonstrated how they have been harmed by the misrepresentation," as described above. Id.; (see also June 28, 2006 Order at 15–16 (Plaintiffs' "MCFA claims based on [Bank of America's] activities that occurred after November 15, 2001 are . . . preempted" by the FCRA).)[7]

---

[7]       And, "[t]o bring a cause of action under [the MFCA, Minn. Stat. § 325F.69,] . . . [Plaintiffs] must satisfy the requirements of the Private Attorney General Statute, Minn. Stat. § 8.31(3)a," which requires that Plaintiffs "show that [their] cause[] of action benefit[s] the public." Davis v. U.S. Bancorp, No. 02 Civ. 505, 2003 WL 21730102, at *4 (D. Minn. July 23, 2003).  Because "the damages that [Plaintiffs] request[] are for

(2)     **Attorney's Fees**

Bank of America argues that it is entitled to attorney's fees and disbursements under FCRA § 1681n(c) because, among other things, " [P]laintiffs have always known that they could not have been denied any credit or suffered any damages as a result of [Bank of America's] alleged errors" and Plaintiffs' FCRA allegations are "purposefully misleading, harassing and knowingly unsubstantiated." (BOA Mot. at 28.) Plaintiffs counter, among other things, that Bank of America's application for attorney's fees and disbursements "should be denied as moot" because "Plaintiffs have established that [Bank of America's] unlawful foreclosure defense fails and that [Plaintiffs] are entitled to summary judgment." (Pls. Sur-Reply at 10.)

FCRA § 1681n(c) "provides for an award of fees associated with responding to an unsuccessful pleading or motion that was filed 'in bad faith or for purposes of harassment.'" Edge v. Prof'l Claims Bureau, Inc., 64 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (quoting 15 U.S.C. § 1681n(c)). Bank of America must show that Plaintiffs "commenced and continued the litigation in bad faith or for purposes of harassment." Id.

The Court has reviewed the record and submissions of the parties and declines to award attorneys fees to **either** side in this case. See Edge, 64 F. Supp. 2d at 119. While Defendant argues that Plaintiffs filed their FCRA claim "in bad faith or for the purposes of harassment" as part of a "decades long crusade to frustrate the enforcement of Bank of America's [Mortgage]," (BOA Mot. at 27–28 (internal quotations and citations omitted)), Bank of America has not put forth sufficient evidence to establish that Plaintiffs' FCRA

personal benefit only, [Plaintiffs] cannot meet this requirement, and [their MCFA] claim[] must be dismissed." Id.; see also Antioch Co. v. Scrapbook Borders, Inc., 291 F. Supp. 2d 980, 1003–04 (D. Minn. 2003); (Am. Compl. at 14.)

claim was filed in bad faith or for the purposes of harassment.  See Rogers v. Johnson-Norman, 514 F. Supp. 2d 50, 52–53 (D. D.C. 2007); Stiff v. Wilshire Credit Corp., No. 05 Civ. 462, 2005 WL 2886025, at *2 (D. Ariz. Nov. 1, 2005).[8]  And, while Plaintiffs' claims for summary judgment are unsupportable, because Plaintiffs are proceeding pro se, they "would not be entitled to recover attorney's fees even if [they] were successful on [their] . . . FCRA claims."  Menton v. Experian Corp., No. 02 Civ. 4687, 2003 WL 941388, at *3 n.7 (S.D.N.Y. Mar. 6, 2003).

(3)     **FDCPA Claims**

Bank of America argues that neither Bank of America nor Bank of America Mortgage is liable under the FDCPA because, among other things, Plaintiffs "were well aware that Bank of America was their creditor and that Bank of America was collecting its own debts"; "Bank of America has fully and consistently disclosed its relationship with [Bank of America] Mortgage" in its correspondence to Plaintiffs; Plaintiffs "made various monthly payments by check drawn to the order of Bank of America, not [Bank of America] Mortgage"; Bank of America "cannot be held vicariously liable for the actions of Leonard, O'Brien, i.e., the law firm it hired to foreclose the [P]laintiffs' defaulted [Mortgage]"; and "debt collection was not the main function of [Bank of America] Mortgage and it only collected debts for Bank of America as a servicer."  (BOA Mot. at 14, 15, 17, 20.)

---

[8]     (Compare BOA Mot. at 27–28 with June 28, 2006 Order at 1–2 n.1 ("Plaintiffs appear to have initiated other litigation involving real property in Dakota County, Minnesota and, on occasion, to have been criticized for litigation practices.")); see also, e.g., Burns v. State of Minn., 61 F.3d 908, at *1 (8th Cir. 1995); Matter of Burns, 542 N.W.2d 389, 390 (Minn. 1996); Burns v. Ungerman, No. 04 Civ. 290, 2005 WL 468304 (Minn. Ct. App. Mar. 1, 2005); Burns v. Ungerman, No. 03 Civ. 17802, 2004 WL 848272 (Minn. Dist. Ct. Jan. 16, 2004); Burns v. R.A. Ungerman Constr. Co., No. 03 Civ. 11603, 2003 WL 23335193, at *2 (Minn. Dist. Ct. July 1, 2003); In re Barbara Burns, No. 94 Civ. 19334, 1997 WL 33643279, at *1–3 (Minn. Dist. Ct. Apr. 2, 1997); Burns v. R.A. Ungerman Constr. Co., No. 94 Civ. 13558, 1995 WL 17079249, at *1–4 (Minn. Dist. Ct. June 15, 1995).

Plaintiffs counter that Bank of America is liable under the FDCPA because, among other things, "Plaintiffs have no business relationship with Bank of America that involves the [Minnesota Property]"; "the issue of whether the Plaintiffs were misled by the name '[Bank of America] Mortgage' is an issue of fact for the jury"; and "Bank of America is liable for unlawful acts committed by [Lawrence, O'Brien] at Bank of America's direction under well-established and time-honored legal doctrines of respondeat superior . . . and ostensible agency." (Pls. Cross-Mot. at 24, 25.)

**Bank of America**

"The [FDCPA] is quite clear that it is directed at independent debt collectors and not creditors attempting to collect on their own debts." Beck v. Alliance Funding Co., 113 F. Supp. 2d 274, 275 (D. Conn. 2000); see also Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998).[9]  The record shows that Bank of America "sought to collect its own [$111,000.00] debt from [P]laintiff" relating to the Minnesota Property; Bank of America "is in the business of, among other things, financing mortgages for home buyers"; and its "principal business is not debt collection." (Tobolski Decl. ¶¶ 11, 12; see also id., Exs. B, C.) Bank of America is not liable under the FDCPA because it "is clearly not a 'debt collector'; rather, it is the very party to whom the debt is due." Macdermid v. Discover Fin. Servs., 488 F.3d 721, 735 (6th Cir. 2007); see also Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007).

---

[9]     "Under 15 U.S.C. § 1692(a)(4), a 'creditor' is defined as 'any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.'" Masudi v. Ford Motor Credit Co., 07 Civ. 1082, 2008 WL 2944643, at *3 (E.D.N.Y. July 31, 2008) (quoting 15 U.S.C. § 1692(a)(4)).

Nor is Bank of America a creditor under the FDCPA "merely because [it] utilized a corporate affiliate [i.e., Bank of America Mortgage] to collect its debts." Harrison v. NBD Inc., 990 F. Supp. 179, 184 (E.D.N.Y. 1998); see also Maguire, 147 F.3d at 235 ("[A] creditor becomes subject to the FDCPA if the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.") (quoting 15 U.S.C. § 1692(a)(6)).  The record "dispel[s] any notion that [Bank of America Mortgage] might be a distinct third-party collection agency." Button v. GTE Serv. Corp., No. 96 Civ. 383, 1996 WL 943904, at *1 (W.D. Mich. Oct. 15, 1996).  "Even the least sophisticated consumer . . . would be able to determine from cursory review of the correspondence" from Bank of America Mortgage to Plaintiffs "that [Bank of America Mortgage] is . . . related to [Bank of America]." Id. at *2; see also Maguire, 147 F.3d at 236; (Tobolski Decl. ¶ 14 & Ex. D (correspondence prominently displayed both Bank of America's corporate logo and the legend:  "Bank of America Mortgage is a division of Bank of America, N.A.").)  The "relatedness of the two entities would [also] be apparent from the similarity of the creditor's [Bank of America] and its affiliate's [Bank of America Mortgage] name." Maguire, 147 F.3d at 236 (citing Young v. Lehigh Corp., No. 80 Civ. 4376, 1989 WL 117960, at *22 (N.D. Ill. Sept. 28, 1999)).  Plaintiffs do not even appear to allege that they "suffered confusion as to the relationship between [Bank of America] and [Bank of America Mortgage]." Franceshci v. Mautner-Glick Corp., 22 F. Supp. 2d 250, 255 (S.D.N.Y. 1998); see also Button, 1996 WL 943904, at *3; (Pls. Cross-Mot. at 22; Am. Compl. at 8–12; Tobolski Decl. ¶ 15 & Ex. E.)

And, "a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." Doherty v. Citibank (South

Dakota) N.A., 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005).  There is no evidence that Bank of

America "used [Leonard, O'Brien's] name to collect its debts, pretended to be [Leonard,

O'Brien] or used an alias to that effect, or that [Bank of America] controlled almost every

aspect of Leonard, O'Brien's] debt collection practice, rendering [Leonard, O'Brien Bank of

America's] alter ego."  Mazzei v. Money Store, 349 F. Supp. 2d 651, 661 (S.D.N.Y. 2004);

see also Fouche' v. Shapiro & Massey L.L.P., No. 07 Civ. 251, 2008 WL 3285742, at *5

(S.D. Miss. Aug. 5, 2008); (Wilford Decl. ¶ 4.)

### Bank of America Mortgage

"[A] corporate affiliate is excluded from the [FDCPA's] coverage so long as it

satisfies two conditions:  [i] the affiliate collects debts only for entities with which it is

affiliated or related; and [ii] the principal business of the affiliate is not debt collection."

Aubert v. Am. Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998); see also Backuswalcott v.

Common Ground Cmty. HDFC, Inc., 104 F. Supp. 2d 363, 366 (S.D.N.Y. 2000).  The record

demonstrates that, "[t]o the extent that [Bank of America] Mortgage engaged in debt

collection, it did so solely for Bank of America and was, in fact, a corporate affiliate of Bank

of America"; and Bank of America Mortgage's "principal business was not debt collection."

(Tobolski Decl. ¶ 13.)  Bank of America Mortgage thus "meets [the] requirements of [the

corporate affiliate] exemption."  Backuswalcott, 104 F. Supp. 2d at 366; see also Byes v.

Edison Bros. Stores, Inc., No. 94 Civ. 3100, 1995 WL 244441, at *2 (E.D. La. Apr. 26,

1995).

(4)     **Minnesota State Law Claims of Conversion, Trespass, and Slander of Title[10]**

Bank of America argues, among other things, that Plaintiffs should be collaterally estopped from relitigating the validity of Bank of America's foreclosure of the Minnesota Property because "it has already been judicially determined by a final order of the Dakota County Minnesota District Court [in In re R.A. Ungerman] that [the] foreclosure was proper." (BOA Mot. at 25.)  Plaintiffs counter, among other things, that collateral estoppel does not apply because Bank of America is citing "a proceeding involving different claims by different parties than the claims and parties to this case."  (Pls. Cross-Mot. at 28.)

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "federal courts must give state court judgments the same preclusive effect they would be given by other courts in the state from which the judgment emerged."  Postma v. First Fed. Savings & Loan of Sioux City, No. 93 Civ. 4058, 1995 WL 807082, at *11 (N.D. Iowa Mar. 28, 1995), aff'd, 74 F.3d 160 (8th Cir. 1996).  "Collateral estoppel is available where:  [i] the issues are identical to those in a prior adjudication; [ii] there was a final judgment on the merits; [iii] the estopped party was a party or in privity with a party in the previous action; and [iv] the estopped party was given a

---

[10]     This Court previously held that "[e]ven if Plaintiffs had asserted diversity jurisdiction, this action would appear more properly to have been filed and prosecuted in Minnesota." Burns, 2003 WL 22990065, at *3, vacated on other grounds, 115 Fed. Appx. 105 (2d Cir. 2004); (see also Nov. 19, 2008 Hearing Tr. at 6–7, 20–21.)  And, although Minnesota likely remains an appropriate venue for Plaintiffs' conversion, trespass, and slander of title claims, the Court has addressed the merits of these claims in the interests of judicial efficiency and at the parties' request.

full and fair opportunity to be heard on the adjudicated issues." <u>Lyon Fin. Servs., Inc. v. Waddill</u>, 625 N.W.2d 155, 158–59 (Minn. Ct. App. 2001).[11]

Plaintiffs' Minnesota state law conversion, trespass, and slander of title claims clearly appear to involve issues previously adjudicated by the Minnesota District Court in <u>In re R.A. Ungerman</u>, <u>i.e.</u>, whether there is a "recorded assignment . . . that establishes [Bank of America] as assignee[] of the [Mortgage] or which authorizes [Bank of America] to foreclose the [Mortgage]" and/or whether Bank of America satisfied statutory "pre-requisites" to "a lawful foreclosure action" against the Minnesota Property.[12] (Pls. Cross-Mot. at 27); <u>see also</u> <u>Holasek v. First Nat. Bank of Rochester</u>, 278 N.W.2d 519, 522 (Minn. 1979); <u>In re Sina</u>, No. 06 Civ. 200, 2006 WL 2729544, at *3 (Minn. Ct. App. Sept. 26, 2006); <u>Boerboom v. Travelers Ins. Co.</u>, No. 92 Civ. 2456, 1993 WL 152300, at *1 (Minn. Ct. App. May 11, 1993).

Collateral estoppel applies against the Plaintiffs here. That is, in <u>In re R.A. Ungerman</u>, the Minnesota District Court determined that the "foreclosure and Sheriff sale by [Bank of America] Mortgage . . . was proper in every material respect" and the Court there ordered the issuance of a new Certificate of Title to the Minnesota Property in favor of R.A. Ungerman.[13] (Wilford Decl., Ex. I at 7); <u>see</u> <u>In re Sina</u>, 2006 WL 2729544, at *3; <u>see also</u>

--------

[11]    "Unpublished cases from [the Court of Appeals of Minnesota] are not precedential but may be persuasive." <u>State v. Awad</u>, No. 06 Civ. 2306, 2007 WL 4170822, at *3 (Minn. Ct. App. Nov. 27, 2007) (citing Minn. Stat. § 480A.08(3)(c) (2006)).

[12]    It appears that the same issues underlying Plaintiffs' conversion claim also form the basis of Plaintiffs' trespass and slander of title claims. (<u>See</u> Pls. Cross-Mot. at 8, 9, 13, 15, 26–27; Pls. Sur-Reply 5–8.)

[13]    The Minnesota District Court explicitly considered the Report of the Examiner of Titles and the Certificate of Title to the Minnesota Property, (<u>see</u> <u>Wilford Decl.</u>, Ex. I at 1–3), and determined that Bank of America possessed a valid and enforceable mortgage interest in concluding that the foreclosure was proper. <u>See</u> <u>In re Kress Road P'ship</u>, 134 B.R. 301, 309

Burns v. Chubb Ins. Cos., No. 04 Civ. 1284, 2007 WL 1484480, at *1 (N.J. Super. Ct. App. Div. May 23, 2007). The Minnesota District Court's decisions constitutes a final judgment on the merits. (See id. at 1); see also McWhinney v. Gage, 235 N.W. 676, 677–78 (Minn. 1931). And, Plaintiffs were parties to the proceedings in In re R.A.Ungerman and had a full and fair opportunity to contest the validity of the foreclosure before the Minnesota District Court. (See Wilford Decl., Ex. I at 1, 4–6.) As the Minnesota District Court made clear, Plaintiffs were served with two orders to show cause; Barbara Burns had "purposefully been avoiding service" but had "actual knowledge of the pendency of this matter"; and Kevin Burns appeared in court at the December 24, 2003 hearing to contest personal jurisdiction. (Id. at 5–6); see also Postma, 1995 WL 807082, at *13.

Even assuming, arguendo, that collateral estoppel did not apply to the issues underlying Plaintiffs' conversion, trespass, and slander of title claims, Plaintiffs have "not proffered any competent evidence which would create a genuine issue of material fact" to prevail on these claims. Dixon v. Deutsche Bank Nat. Trust Co., No. 06 Civ. 2858, 2008 WL 4151835, at *5 (D. Minn. Sept. 3, 2008).

**Conversion**

Conversion "is defined as an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotations and citation omitted).

---

(Bankr. N.D. Ill. 1991); In re Sina, 2006 WL 2729544, at *2 ("A party claiming to be the assignee of a mortgage must have a legal assignment thereof, duly recorded, before he can foreclose it by advertisement.") (internal quotations and citation omitted); see also In re Metro Siding, Inc., 624 N.W.2d 303, 308 (Minn. Ct. App. Apr. 3, 2001).

Plaintiffs' conversion claim fails as a matter of law, see AHR Constr., Inc. v. Dixon, No. 06 Civ. 1554, 2007 WL 2417083, at *3 (Minn. Ct. App. Aug. 28, 2007), because, among other things, the record indicates that "[o]n July 5, 2002, the [Mortgage] was in default, and it remained in default [in the amount of approximately $99,994.51] through the date of the foreclosure sale" on December 5, 2002. (BOA 56.1 ¶ 21; see also Wilford Decl., Ex. H.) As a result of Plaintiffs' default (and their failure timely to cure the default), the terms of the Mortgage authorized Bank of America to accelerate the remaining payments and "invoke the power of sale and any other remedies permitted by applicable law." (Tobolski Decl., Ex. A ¶ 19; see also id. ¶ 20 (right of possession upon acceleration). There is no evidence indicating that the foreclosure and Sheriff's sale by Bank of America failed to comply with Minnesota law. Quite the contrary. (See Wilford Decl. ¶¶ 6–14; see also Wilford Decl., Ex. I at 3–4); Dixon, 2008 WL 4151835, at *4–5 (defendants "submitted evidence that Dixon defaulted on the Mortgage, that the Mortgage was recorded, and that there has been no action [at law] to recover the debt from Dixon").[14]

**Trespass**

"Trespass encompasses any unlawful interference with one's person, property, or rights, and requires only two essential elements: [i] a rightful possession in the plaintiff and

---

[14]    Plaintiffs cite to an undated deposition of Sharon K. Hills, who Plaintiffs claim is an "attorney for the City of Apple Valley, Minnesota," presumably for the proposition that the Minnesota Property was "owned and in the possession of the Plaintiffs at all legally relevant times." (Pls. Cross-Mot. at 26, see also id. at 8 n.6, 18–19, 27.) The deposition does not appear to have been conducted in this case. (See B. Burns Certification ¶ 9; see also Order, dated Jan. 22, 2008 (Francis, M.J.), at 1; Order, dated Feb. 15, 2008 (Francis, M.J.), at 2 ("The discovery deadline was extended to January 31, 2008 solely for purpose of taking [Ms. Hills's] deposition. However, [P]laintiffs chose to depose her in a different case and failed to subpoena her for deposition in this case.").

24

[ii] unlawful entry upon such possession by the defendant." Special Force Ministries v. WCCO Television, 584 N.W.2d 789, 792–93 (Minn. Ct. App. 1998).

The record does not support a finding that Bank of America trespassed upon the Minnesota Property.  See Thompson v. First State Bank of Fertile, 709 N.W.2d 307, 312 (Minn. Ct. App. 2006).  Minnesota law provides that "[i]f premises described in a mortgage . . . are vacant or unoccupied, the holder of the mortgage . . . or the holder's agents and contractors may . . . enter upon the premises to protect the premises from waste."  Minn. Stat. § 582.031 (2008).  The record shows that "[a]t all material times, Fisher Pratt performed services to prevent waste to [the Minnesota Property]" and that, as noted above, see supra p. 6, the Minnesota Property was vacant each time Fisher Pratt entered upon premises between September and December 2002.  (Smith Decl. ¶¶ 17; see also id. ¶¶ 7-16 & Exs. A–B; Tobolski Decl., Ex. L; Wilford Decl., Ex. F.); Thompson, 709 N.W.2d at 312; AHR Constr., 2007 WL 2417083, at *1–2.[15]  Once Plaintiffs' defaulted on the Mortgage in July 2002, (see BOA 56.1 ¶ 21), Bank of America was authorized under the Mortgage to "do and pay for whatever [was] necessary to protect the value of the [Minnesota] Property and [Bank of America's] rights in the [Minnesota] Property."  (Tobolski Decl., Ex. A ¶ 7); see also State Bank of Loretto v. Dixon, 214 Minn. 39, 45 (Minn. 1943); Thompson, 709 N.W.2d at 312

---

[15]    Plaintiffs allege that in or about October 2004, Bank of America damaged the Minnesota Property by, among other things, "dismantl[ing] the . . . water softener and otherwise damag[ing] the Burns's personal property."  (Am. Compl. at 15.)  Plaintiffs offer no documentary evidence to support these contentions or that Bank of America exceeded its authority to protect the Minnesota Property from waste, see AHR Constr., 2007 WL 2417083 at *3; see also Williams v. The Thomson Corp., No. 00 Civ. 2256, 2003 WL 1571559, at *15 (D. Minn. Mar. 21, 2003).  And, Plaintiffs' self-serving and unsubstantiated deposition testimony is insufficient to create a triable issue of fact as to the existence and amount of any alleged damages.  (See, e.g., K. Burns Dep. at 36–38; B. Burns Dep. at 41-43,45); see also Central Mfg., Inc. v. Brett, 492 F.3d 876, 883 (7th Cir. 2007) ("Self-serving deposition testimony is not enough to defeat a motion for summary judgment.").

("if the secured party has a privilege to enter another's land to take possession of collateral after default, the entry is not a trespass").

**Slander of Title**

"The elements required for a slander of title claim are:  [i] [t]hat there was a false statement concerning the real property owned by the plaintiff; [ii] [t]hat the false statement was published to others; [iii] [t]hat the false statement was published maliciously; [iv] [t]hat the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages." Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000); see also In re Nielsen, No. 96 Civ. 47257, 1998 WL 386384, at *4 (Bankr. D. Minn. July 9, 1998) ("in a slander of title case, a finding of malice requires that the disparaging statements be made without a good faith belief in their truth").

Bank of America's November 14, 2002 publication (in connection with the foreclosure proceedings) that it held the Mortgage as "successor in interest to Goldome Realty Credit Corporation" was not a false statement.  (See Wilford Decl., Ex. D; see also BOA 56.1 ¶¶ 4–5; Tobolski Decl. ¶¶ 4–9 & Exs. B, C; Wilford Decl., Ex. I (attached Certificate of Title to Minnesota Property).); see also Burgmeier v. Bjur, No. 02 Civ. 743, 2003 WL 42178, at *2 (Minn. Ct. App. Jan. 7, 2003) ("Because [the quitclaim deed] is not false, there can be no publication of a false statement.").  Plaintiffs fail to produce specific, admissible evidence to show that a genuine issue of material fact exists regarding any bad faith on the part of Bank of America.  See Davidson v. Devoe, No. 90 Civ. 2228, 1991 WL 26056, at *2 (Minn. Ct. App. Mar. 5, 1991); see also Palatine Nat. Bank v. Olson, No. 95 Civ. 924, 1995 WL 697520, at *2 (Minn. Ct. App. Nov. 28, 1995); Wenner v. Pioske, No. 90 Civ. 89, 1990 WL 128290, at *4 (Minn. Ct. App. Sept. 11, 1990) (if "defendant files

26

a . . . lien[] on a piece of property in good faith, believing that he has rights to the property, then there is no malice, and thus no slander of title").

And, Plaintiffs fail to show that the alleged false publication by Bank of America caused them pecuniary loss in the form of special damages. See Burgmeier, 2003 WL 42178, at *2. For example, there is no admissible evidence that the Minnesota Property would have been sold by Plaintiffs to any specific individual or entity but for Bank of America's allegedly false publication. See Haasken v. Haefele, No. 96 Civ. 1370, 1997 WL 132973, at *2 (Minn. Ct. App. Mar. 25, 1997). And, pro se Plaintiffs would not be entitled to attorney's fees. See White v. Armontrout, 29 F.3d 357, 261–62 (8th Cir. 1994).

**(5)      Bank of America's Fed. R. Civ. P. 37 Application**

Bank of America argues, among other things, that "[d]uring their respective depositions, [P]laintiffs agreed to produce [certain] documents, which they claim existed, but they never did" and Plaintiffs "should be precluded . . . from offering any evidence not previously disclosed in discovery." (BOA Mot. at 7.) Plaintiffs counter, among other things, that "most of the allegedly 'withheld evidence' . . . consists of materials accessible to [Bank of America] from third parties . . . or in [Bank of America's] own possession." (Pls. Cross-Mot. at 19.)

In light of the Court's ruling on the parties' cross-motions for summary judgment, the Court denies as moot Bank of America's application. See Trustees of Teamsters Union Local 142 Pension Trust Fund v. JGM, No. 06 Civ. 58, 2007 WL 489226, at *6 (N.D. Ind. Feb. 8, 2007).

**Plaintiffs' Fed. R. Civ. P. 11 and 37 Applications**

Plaintiffs argue that sanctions are warranted against Bank of America under Fed. R. Civ. P. 11 and 37 because, among other things, Bank of America took "an unsuccessful legal position on . . . appeal"; filed "two unsuccessful motions to dismiss" reflecting "knowing, purposefully misleading Defendant statements and actions"; and "withheld copies of . . . subpoenaed Chase documents from the Plaintiffs in an attempt to thwart supplemental . . . discovery." (Pl. Cross-Mot. at 18, 30.)[16] Bank of America counters, among other things, that Plaintiffs "improperly seek [Fed. R. Civ. P. 11 and 37] sanctions against Bank of America and its counsel through [P]laintiffs' cross-motion [for summary judgment] rather than by separate motion on proper twenty-one days' notice" and Bank of America's motion for summary judgment "is grounded in fact and warranted by existing law." (BOA Reply at 8 & n.10.)

Even assuming, arguendo, that Plaintiffs' motion for Fed. R. Civ. P. 11 sanctions had complied with applicable procedure (which it does not), "sanctions should be imposed with caution" and the Court sees no basis for them here. U.S. Media Corp. v. Edde Entm't Corp., No. 94 Civ. 4849, 1998 WL 401532, at *28 n.43 (S.D.N.Y. July 17, 1998) (internal quotations and citations omitted). A review of the record demonstrates that Bank of America did not violate Fed. R. Civ. P. 11, Wilson v. Subway Sandwiches Shops, Inc., 823 F. Supp.

---

[16]    To the extent that Plaintiffs are referring to the appeal of this Court's ruling on December 18, 2003, see Burns, 2003 WL 22990065, Plaintiffs "mischaracterize the Second Circuit's ruling in this case, [Burns, 115 Fed. Appx. 105], as having rejected [Bank of America's] motion to dismiss and its substantive arguments on the merits." Burns, 2007 WL 1589437, at *10 n.9. In fact, the Court of Appeals accepted Bank of America's arguments, but in light of the Plaintiffs' pro se status, deemed it prudent to allow the Plaintiffs an opportunity to amend their complaint. See id.; (see also Nov. 19, 2008 Hearing Tr. at 18–19.)

194, 200 (S.D.N.Y. 1993), nor does "the behavior of [Bank of America's] attorneys warrant the imposition of sanctions." Bolden v. Morgan Stanley & Co., Inc., 765 F. Supp. 830, 834 (S.D.N.Y. 1991).

Plaintiffs present no evidence to support the conclusion that Bank of America failed to produce documents in discovery. See Barnes v. City of Chicago, No. 98 Civ. 5590, 2000 WL 1745180, at *1 (N.D. Ill. Nov. 27, 2000).[17]

### Plaintiffs' Fed. R. Civ. P. 56(f) Application

Plaintiffs argue, among other things, that they "cannot present facts essential to justify [their] opposition on the basis that [Bank of America has] refused to participate in authorized, court-ordered discovery, including, but not limited to, deposition and cross-examination of . . . Wilford"; and Bank of America has "gone to almost comical lengths to prevent Wilford from being placed under oath and preventing damaging admissions by Wilford that Bank of America and [Bank of America] Mortgage were not of record and not empowered to foreclose a mortgage on the [Minnesota Property]." (Pls. Cross-Mot. at 11–12; Pls. Sur-Reply at 8 n.14.)

Plaintiffs' Fed. R. Civ. P. 56(f) application is denied on procedural grounds because the parties' summary judgment motions were filed after the January 31, 2008 discovery deadline. See Little v. City of New York, 487 F. Supp. 2d 426, 436 (S.D.N.Y. 2007) ("Rule 56(f) applications are for summary judgment motions made before discovery has concluded") (emphasis in original). And, Plaintiffs did not submit appropriate Rule 56(f) affidavits in support of their discovery claim. See AAI Recoveries, Inc. v. Pijuan, 13 F.

---

[17]     Plaintiffs' unsubstantiated allegations that Bank of America withheld discovery have been addressed in several earlier discovery orders. (See, e.g., Order, dated Mar. 27, 2008 (Berman, J.); Order, dated Feb. 21, 2008 (Berman, J.); Order, dated December 14, 2007 (Francis, M.J.); see also Hearing Tr., dated Apr. 3, 2008, at 5, 7–8.)

Supp. 2d 448, 452 (S.D.N.Y. 1998). "It is well settled in this Circuit that a motion for further

discovery under Rule 56(f) may not be granted unless the moving party submits an affidavit

satisfactorily explaining [i] the nature of the uncompleted discovery; [ii] how the facts sought

are reasonably expected to create a genuine issue of material fact; [iii] what efforts the affiant

has made to obtain those facts; and [iv] why those efforts were unsuccessful." Bussey v.

Phillips, 419 F. Supp. 2d 569, 591 (S.D.N.Y. 2006); see also Sundsvallsbanken v. Fondmetal,

Inc., 624 F. Supp. 811, 814 (S.D.N.Y. 1985) ("Rule 56(f) is not a shield against all summary

judgment motions").

        The materials which Plaintiffs have submitted are insufficient.  That is, Kevin Burns

states in his affidavit, dated June 2, 2008, that he served a subpoena to depose Wilford "at

[Wilford's] offices at Woodbury, Minnesota on June 21, 2007 and on at least two occasions

thereafter," and that Wilford objected "that he was not subject to the jurisdiction of the New

York federal court" and "made a number of [other] technical objections to the subpoena."

(Aff. & Certification of Kevin E. Burns, dated June 2, 2008 ("K. Burns Aff."), ¶¶ 27, 30.)

Barbara Burns states in her affidavit (undated and unsworn) that she "personally discussed

various objections [by Wilford] to the validity of the . . . subpoena" with the state court in

Washington County, Minnesota and was "told by the Court Administrator and her Chief

Deputy on two separate occasions between the dates of June 27, 2007 and August 30, 2007"

that the subpoena "was valid and 'should be obeyed.'"  (B. Burns Certification ¶ 5.)  But,

Plaintiffs' affidavits do not, among other deficiencies, satisfy their "burden of showing how

the [Wilford] deposition . . . would produce material evidence which would be potentially

favorable to them."  Contemporary Mission, Inc. v. New York Times Co., 665 F. Supp. 248,

269 (S.D.N.Y. 1987).

In any event, since at least June 2006, Plaintiffs have had ample "opportunity to seek the testimony . . . of [Wilford] prior to the [January 31, 2008] close of discovery" and to enlist Magistrate Judge Francis in such an effort.  Williams v. Bank Leumi Trust Co. of New York, No. 96 Civ. 6695, 2000 WL 343897, at *5 (S.D.N.Y. Mar. 31, 2000); see also Little, 487 F. Supp. 2d at 435–36.  It appears that Plaintiffs may have served Wilford with a defective subpoena, ostensibly "issued by the Clerk of the Southern District of New York on October 20, 2006."  Burns, 2007 WL 1589437, at *7.  Wilford objected that "the subpoena was not properly issued from the district court for the district where the deposition was to take place, in this case Minnesota; that the subpoena provided insufficient notice, as it was received on November 20 and set a deposition date only four days later (and for the day after Thanksgiving); and that the [P]laintiffs failed to provide witness fees."  Id.  On or about November 21, 2006, Plaintiffs "issued" a second subpoena purporting "to issue from the District Court for the District of Minnesota," setting "the same deposition time and place," and "signed **not** by the Clerk of the court but by [P]laintiff Barbara R. Burns."  Id. (emphasis added).  And, in fact, Magistrate Judge Francis determined that "both of the subpoenas issued by the [P]laintiffs were invalid."  Id. at *8; (see also Order, dated July 18, 2007 (Berman, J.), at 8–9; Order, dated August 2, 2007 (Francis, M.J.), at 2; Order, dated Feb. 21, 2008 (Berman, J.), at 5–6.)

**Amendment**

This Decision and Order is final.  See Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985); Vaughn v. Consumer Home Mortg. Co., Inc., No. 01 Civ. 7937, 2006 WL 2239324, at *14-15 (E.D.N.Y. Aug. 4, 2006).  Plaintiffs presented no argument in their papers to support further leave to amend – and no such leave is granted.

31

See DiPace v. Goord, 308 F. Supp. 2d 274, 289 (S.D.N.Y. 2004).  Following the December 14, 2004 decision of the United States Court of Appeals for the Second Circuit, Plaintiffs were provided with the opportunity to file an amended complaint, which they did on or about August 2, 2005 – well before each side sought summary judgment.  See Burns, 115 Fed. Appx. 105; see also Yang v. New York City Transit Auth., No. 01 Civ. 3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002).  Finally, permitting further amendment would be prejudicial to Bank of America given the fact that discovery has already been completed and Bank of America and Plaintiffs have filed their respective motions for summary judgment. See Ansam Assocs., 760 F.2d at 446.

## V.       Conclusion and Order

For the foregoing reasons, Bank of America's motion for summary judgment [#182] is granted as to all of Plaintiffs' Federal and Minnesota state law claims, and denied as to Bank of America's application for attorney's fees under FCRA § 1681n(c) and Bank of America's Fed. R. Civ. P. 37 application.  Plaintiffs' cross-motion for summary judgment [#186] is denied in its entirety.

The Clerk of Court is respectfully requested to close this case.


Dated: New York, New York
       December 4, 2008

_____
RICHARD M. BERMAN, U.S.D.J.